**MATERIAL MOVERS, INC., Respondent,**

v.

**Vera HILL, et al., Appellants.**

Nos. 81–342, 81–372.

Supreme Court of Minnesota.

Feb. 19, 1982.

Hoversten, Strom, Johnson & Rysavy, John S. Beckmann, Austin, for appellants.

Peterson, Hanson, Schlichting & Davies, Albert Lea, for respondent.

PETERSON, Justice.

Defendants Vera Hill and Margit Deutsch appeal from a judgment in favor of plaintiff Material Movers, Inc. in this suit to recover damages for breach of a construction contract. The principal issues presented are whether the trial court committed reversible error by excluding certain evidence relating to the parties' agreement and by refusing to instruct the jury that the doctrine of substantial performance has no application where deviations from a contract are intentional. We conclude that the trial court's rulings were erroneous and that they so prejudiced the defendants as to entitle them to a new trial.

In 1979, Vera Hill decided to enter the dairy farming business. She purchased cows for a herd and planned a barn to be built on land owned by her mother, Margit Deutsch. Mrs. Hill contracted with a local builder, Roger Hill, to construct the barn's footings, foundation, walls, roof and ceiling. She also contracted with a plumber, an electrician, and various sellers of dairy equipment, including Material Movers, to perform other aspects of construction. The total cost of these construction contracts was approximately $75,000.

Mrs. Hill began doing business with Material Movers on August 22, 1979, when she executed a purchase agreement calling for purchase of stalls, pens, a gutter cleaner, and various other items used in a dairy barn. The agreement also specified that Material Movers would supply and pour the concrete for the barn floor and three slabs outside the barn. It further provided that Material Movers would install the equipment purchased plus cow mats acquired by Mrs. Hill from another dealer. Written on the agreement and circled was the statement "Subject to Building Construction by Roger Hill." The total price was $15,470.35. The terms were $3,094.07 down, $6,188.14 on delivery and the balance on completion. Mrs. Hill made the downpayment. She subsequently signed an identical purchase order for three fans costing $1,178.59. This second contract did not provide for installation by Material Movers but it stated: "Must be adequate for building."

Subsequent to the execution of the first purchase agreement, on September 18, 1979, Mrs. Hill and Luverne Jenson, the Material Movers employee with whom she was dealing, went at her request to view a barn built and owned by a nearby dairy farmer, John Kvasnicka. They were at Kvasnicka's farm at least 2 hours and Jenson and Kvasnicka engaged in detailed conversations concerning the barn. According to Mrs. Hill she told Jenson that she wanted her barn constructed with the same elevations and slopes as the Kvasnicka barn and Jenson agreed that he would construct substantially the same elevations.

On October 25, 1979, the Hill barn was ready for Material Movers to commence installing the floor. The parties met in Vera Hill's kitchen, each with a copy of a blueprint of the barn drawn for Vera Hill by a local lumberyard. The blueprint did not specify any elevations for the floor or drainage structures. An east to west cross-section was penned onto Material Movers' blueprint by Jenson showing the elevations of the foundation, the feed alley, the curb, the stall, and the gutter. No north to south

cross-section was noted. John Kvasnicka's name and telephone number were written on the blueprint by Jenson. Material Movers proceeded to install the floor using the foundation and rafters as reference points for the north-south slope. Unbeknownst to Material Movers the barn had been built to slope downhill from north to south and installation of the floor to follow that slope resulted in an 11 inch backfall of the gutter. The slopes and elevations constructed were not those of Kvasnicka's barn.

Problems between Mrs. Hill and Material Movers developed rapidly. Mrs. Hill requested that the south end of the gutter be moved slightly north, that an area of high concrete be lowered, that a depression in the maternity pen be leveled, and that a portion of the walkway to the feed room be raised. Material Movers made those changes. Mrs. Hill also expressed dissatisfaction with the installation of the cow mats. She had specified that they be set in raw concrete but Material Movers lagged them down. Material Movers subsequently used an adhesive to attach the mats but the result was not satisfactory. While Material Movers was making requested changes, employees of an engineering firm hired by Mrs. Hill shot elevations inside the barn. The engineer recommended that modifications in the north to south slope be made to reduce the backfall of the gutter. Mrs. Hill presented a diagram of the changes to Material Movers but Material Movers declined to undertake them on the ground that they constituted modifications of the blueprint.

Because of these disputes, Material Movers did not return to the jobsite and, therefore, did not complete performance of the contract. No exterior slabs were poured, no gutter plating was installed, and certain pen work and stanchions were not erected. Mrs. Hill hired Roger Hill to finish the job and to overlay the gutter concrete to reduce the backfall to 7 inches. She refused to pay Material Movers claiming that its work was unsatisfactory in several respects. First, the slope of the gutter precludes effective operation of the barn cleaner by causing wastes to pool at the low end inside the barn. Second, the cow mats have buckled producing both an unsanitary pocket in which manure collects and insects breed and a rough stall which increases expense by requiring the use of large amounts of bedding. Third, the feed alleys are too narrow to permit operation of an automatic feed cart. Fourth, the fans are inadequate to ventilate the barn. Material Movers commenced this lawsuit to recover amounts owing under the two purchase agreements (less the price of items cancelled by Mrs. Hill or not supplied by Material Movers) plus interest and attorneys fees for collection as stated in the contract. Hill and Deutsch answered alleging that Material Movers had not performed. They also counter-claimed for breach of contract, negligence, and breach of warranty.

Prior to trial, Material Movers brought a motion in limine to exclude evidence concerning the parties' visit to John Kvasnicka's barn and conversations relating to it. The trial judge granted the motion on the basis of the parol evidence rule. When it was observed that Kvasnicka's name and telephone number appeared on the blueprint, admittedly part of the contract, the judge permitted defendants to ask Luverne Jenson why that notation appeared. He responded that he had no idea. This answer contradicted Jenson's deposition testimony in which he admitted that Mrs. Hill wanted him to see the Kvasnicka barn as an example of what she had in mind. The court did not allow impeachment with the deposition testimony except insofar as Jenson was instructed to read the prior testimony and then state whether his recollection was refreshed as to why the name appeared on the blueprint. He answered: "The only thing I know is yes, we did go to the John Kvasnicka barn, and yes, his name is on the contract."

Before Mrs. Hill took the stand, her attorney made an offer of proof that she would testify that she told Jenson she wanted the elevations in her barn identical to Kvasnicka's, and that Jenson stated he would make them so. The trial judge made the following ruling:

It is this court's view that the testimony relative to the Kvasnicka statements concerning his specific elevations and the statistical information would be received for the intention of modifying or supplementing the blueprint. The blueprint is technical and detailed in nature. It is this Court's judgment that in order to modify or change that which is technical and detailed in nature that it would be necessary to have a drawing or some similar evidence in writing before this Court would be in a position to receive that evidence for such modification. If, in fact, the defendant in this case had a drawing that had been made by Mr. Kvasnicka and the evidence showed that that had been given to the plaintiff, the Court would receive that. However, to receive oral statements to modify the drawing or an instrument technical in nature would, among other reasons, even if relevant, tend to confuse the issues and mislead the jury.

Thus, Mrs. Hill did not testify concerning Jenson's inspection of the Kvasnicka barn or his alleged representations to her concerning its drainage features. Mrs. Deutsch's testimony was also restricted, as was John Kvasnicka's.

The jury returned a special verdict finding that Material Movers had breached the contract but had substantially performed. Material Movers' damages were set at $11,-692.99 and Mrs. Hill's were determined to be $1,752.78. The trial court ordered judgment accordingly and defendants appealed. The trial court also denied Material Movers' motion for an award of attorneys fees and interest and Material Movers appealed.

■ We first consider whether the trial court erred by excluding evidence of the parties' visit to John Kvasnicka's barn and conversations concerning the barn. Two justifications for the exclusion are advanced—the parol evidence rule and Minn. R.Evid. 403 which permits exclusion of otherwise relevant evidence if its probative value is substantially outweighed by the danger of confusing the issues or misleading the jury. The parol evidence rule makes inadmissible evidence concerning discussions prior to or contemporaneous with the execution of a written instrument when that evidence contradicts or varies the terms of the written agreement. *Housing and Redevelopment Authority v. First Avenue Realty Co., Inc.*, 270 Minn. 297, 133 N.W.2d 645 (1965). Evidence of subsequent oral agreements is not excluded by the rule. *Duffy v. Park Terrace Supper Club, Inc.*, 295 Minn. 493, 206 N.W.2d 24 (1973). And, where a written agreement is ambiguous or incomplete, evidence of oral agreements tending to establish the intent of the parties is admissible. *Weyerhaeuser Co. v. Hvidsten*, 268 Minn. 448, 129 N.W.2d 772 (1964).

■ Here the record indicates that the representations concerning Kvasnicka's barn were made subsequent to the signing of the purchase agreement for installation of the barn floor. Moreover, the purchase agreement is silent with respect to the floor elevations. We cannot, therefore, conclude that the evidence violates the parol evidence rule with respect to that written document. Material Movers focuses, however, on the blueprint, arguing that it, rather than the purchase agreement, gave the parties' contract final form. The blueprint specifies only an east-west slope for the barn and does not indicate a north-south slope. It is thus incomplete just as the purchase agreement is incomplete. Furthermore, the blueprint bears the inscription "John Kvasnicka 477–2177," an unexplained term of the agreement. We cannot but conclude that parol evidence was admissible to interpret the notation.

■ We are also unpersuaded that the offered oral evidence would have confused the issues or mislead the jury. The drainage slopes of a dairy barn are obviously an important aspect of its construction. Here the north-south slope, crucial to the operation of the barn cleaner, was omitted from the construction contract documents, including the blueprint. While the defendants' effort to supply the missing term involved technical evidence of the drainage features of a model barn allegedly made

part of the contract by oral agreement, the evidence had significant probative value and was not dissimilar to that frequently offered in construction cases. In our view its exclusion and the resultant frequent objections and conferences, as well as ineffective cross-examination of Jenson and awkward direct examination of Hill, Deutsch, and Kvasnicka, created substantial confusion. The importance of the contract term to which the improperly excluded evidence pertained, coupled with the effect of the exclusion on the trial process, persuades us that prejudice occurred and a new trial is required.

 We next consider whether the trial court erred by refusing to instruct the jury that a contractor who willfully or intentionally deviates from the terms of a contract cannot recover on it. The general rule in building and construction contracts is that the duty to perform is satisfied by "substantial performance." In *Ylijarvi v. Brockphaler*, 213 Minn. 385, 390, 7 N.W.2d 314, 318 (1942), this court stated the following partial definition of the term:

> [S]ubstantial performance means performance of all the essentials necessary to the full accomplishment of the purposes for which the thing contracted for has been constructed, except for some slight and unintentional defects which can be readily remedied or for which an allowance covering the cost of remedying the same can be made from the contract price. Deviations or lack of performance which are either intentional or so material that the owner does not get substantially that for which he bargained are not permissible. * * * While on the state bench, Mr. Justice Cardozo said, in *Jacob & Youngs, Inc. v. Kent*, 230 N.Y. 239, 243, 129 N.E. 889, 891, 23 A.L.R. 1429, that under the rule of substantial performance "there is no general license to install whatever, in the builder's judgment, may be regarded as 'just as good,'" and that a contractor who intentionally deviates from the contract in performance cannot recover—"the willful transgressor must accept the penalty of his transgression.

> * * * For him there is no occasion to mitigate the rigor of implied conditions. The transgressor whose default is unintentional and trivial may hope for mercy if he will offer atonement for his wrong."

The requested instruction was essentially a summary of this statement and our review of the record indicates that there was evidence of intentional deviation. Bolted pen work was substituted for welded, feed alleys were narrowed, and cow mat installation was altered. Material Movers introduced evidence showing that substitutions and modifications were either consented to or the result of misunderstanding or noncooperation. This contradictory evidence required submission of the question of intent to the jury and failure to give an appropriate instruction was prejudicial.

 Although we have determined that Hill and Deutsch are entitled to a new trial, we are persuaded that the trial court correctly decided that Material Movers was not entitled to attorneys fees and interest. The purchase agreements drafted by Material Movers and executed by Mrs. Hill state:

> In the event that the seller has to use legal procedures or proceedings to make collections under this contract, the buyer agrees to pay all reasonable attorney's fees, costs of suit, interest on the unpaid balance and any other costs incurred by the seller in making such collections.

The general rule is that attorneys fees are allowable if authorized by contract or statute, or if a party acts in bad faith. *Cherne Industrial, Inc. v. Grounds & Associates, Inc.*, 278 N.W.2d 81 (Minn.1979). Here the contract is the sole basis for an award. We are not persuaded, however, that this suit qualifies as one to "make collections." Material Movers admitted that it was not entitled to the full contract price because it had not fully performed. That admission reflects that disputes had arisen and indicates that any amount claimed to be owing would be disputed. Mrs. Hill, in fact, denied liability and counterclaimed for damages. Construing the contract narrowly against its drafter we conclude that the trial court correctly determined that the fees provision

had no application where the amount of the debt was admittedly different from the amount specified in the agreement. This same aspect of these facts also precludes an award of prejudgment interest which is allowable only in cases of liquidated claims. *Moosbrugger v. McGraw-Edison Co.*, 284 Minn. 143, 170 N.W.2d 72 (1969).

Affirmed in part; reversed and remanded in part.