Garnet ERICKSON, et al., Appellants,

v.

CURTIS INVESTMENT COMPANY, et al., Defendants and Third-Party Plaintiffs, Respondents,

Leadens Investigation and Security, Inc., and State of Minnesota, Respondents,

Thomas Sabo, Defendant,

Nu–Way House, Inc., Third–Party Defendant, Respondent.

No. C7–88–1177.

Court of Appeals of Minnesota.

Nov. 29, 1988.

Review Granted Jan. 26, 1989.

Robert L. McCollum, Lane Kirchner, McCollum & Daly, Bloomington, Gary J. Gordon, Fetterly & Gordon, Minneapolis, for Garnet Erickson, et al., appellants.

James F. Dunn, Janet S. Stellpflug, Saint Paul, for Curtis Investment Company, et al., defendants and third-party plaintiffs, respondents.

Richard Mahoney, Minneapolis, for Leadens Investigation and Security, Inc., respondent.

Hubert H. Humphrey, III, Atty. Gen., Mary Ann Bernard, Sp. Asst. Atty. Gen., St. Paul, for State of Minn., respondent.

Deborah L. Crowley, Minneapolis, for Nu–Way House, Inc., third-party defendant, respondent.

Heard, considered and decided by CRIPPEN, P.J., and FORSBERG and LOMMEN *, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from the trial court's grant of summary judgment in favor of respondents State of Minnesota, Curtis Investment Company (CIC), Allright Parking Minnesota, Inc. (APM), Allright Auto Parks, Inc. (AAP), and Leadens Investigation and Security, Inc. (Leadens). It is also a cross-appeal by CIC, APM, and AAP from the trial court's grant of summary judgment dismissing third-party claims against Nu–Way House, Inc. (Nu–Way). We affirm in part and reverse in part.

## FACTS

Appellant Garnet Erickson was assaulted and raped at about 5:00 p.m. on December 7, 1983, at the Curtis Parking Ramp in downtown Minneapolis. Erickson worked downtown and was a monthly contract parker at the Curtis Ramp. The ramp was attached to the Curtis Hotel by a skyway. CIC owned and operated the Curtis Hotel and owned the Curtis Ramp. CIC had leased the Curtis Ramp to APM, a subsidi-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

ary of AAP. Leadens was hired by CIC to provide security guards for the hotel.

The alleged rapist, Thomas Sabo, was out on parole when he allegedly raped Erickson. Sabo was referred to Nu–Way for alcohol treatment by the Minnesota Department of Corrections.

## ISSUES

1. Was there a duty on the part of CIC, APM, AAP, and Leadens to provide adequate security measures in the parking ramp?

2. If a duty so exists, is there material issue of fact as to its breach?

3. Was there a material issue of fact as to a causal relationship between the alleged breach of duty and the assault?

4. Was the State of Minnesota immune from liability for a decision to parole Sabo?

5. Was there a duty owed by Nu–Way to control Sabo's conduct?

## ANALYSIS

### I.

Courts vary in their approach to the duty of possessors of property to protect others from crime. Some courts refuse to recognize any duty at all to protect patrons from the criminal acts of third persons merely because they occur on a business' property. *Shaner v. Tucson Airport Authority, Inc.,* 117 Ariz. 444, 448, 573 P.2d 518, 522 (1977); *Davis v. Allied Supermarkets, Inc.,* 547 P.2d 963, 965 (Okla.1976). Other courts recognize that a landowner may be under a duty to protect others from crime under certain carefully limited "special" circumstances. Some courts hold, for example, that no duty arises unless the landowner knows or has reason to know that "acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee." *Cornpropst v. Sloan,* 528 S.W.2d 188, 198 (Tenn.1975); *Henley v. Pizitz Realty Co.,* 456 So.2d 272, 276–77 (Ala.1984). In *Schmanski v. The Church of St. Casimir of Wells,* 243 Minn. 289, 67 N.W.2d 644 (1954) the Minnesota court held:

[T]he occupant of premises, although not an insurer of their safe condition, *is bound to exercise ordinary or reasonable care to keep them in a safe condition for those who come upon them by his express or implied invitation.* Such duty of reasonable care includes the duty of making the premises safe as to dangerous conditions or activities upon the premises of which the occupant knows or of which he ought to have knowledge in the exercise of reasonable care.

*Id.* at 293, 67 N.W.2d at 647 (citing *Zuercher v. Northern Jobbing Co.,* 243 Minn. 166, 171, 66 N.W.2d 892, 896 (1954)) (emphasis added); *see also Ponticas v. K.M.S. Investments,* 331 N.W.2d 907 (Minn.1983) (a landlord was liable under a negligent hiring theory when the resident manager, who had a history of criminal convictions, used a pass key to enter a female tenant's apartment and raped her).

Yet, other courts hold that a criminal attack may be sufficiently foreseeable to ground a duty to prevent it *if and only if* substantially similar crimes have occurred on the premises in the past. *See e.g., Butler v. Acme Markets, Inc.,* 89 N.J. 270, 445 A.2d 1141 (1982) (seven muggings in previous year made eighth sufficiently foreseeable). Similarly, in *Roettger v. United Hospitals of St. Paul,* 380 N.W.2d 856 (Minn. Ct.App.1986), a local hospital in the Twin Cities was found negligent for its inadequate security procedures when a trespasser assaulted a patient. The jury concluded that the hospital's failure to provide adequate security on the patient's floor was a substantial factor in bringing about the patient's injuries. *Id.* at 862. This court affirmed the verdict, recognizing that the hospital owed a duty of care to take reasonable steps to ensure the safety of Roettger while on the hospital premises.

We believe that such a duty exists in this case. First of all, there is evidence that this is a high crime area and that crimes had been committed both in the Curtis Hotel and ramp. Secondly, concern was expressed by Curtis about the number of "street" people and crime in the area. While there were no reported rapes in the

ramp, there were many crimes against property. The security expert's testimony and common sense clearly indicates that property crimes can easily escalate to violent crimes. An interrupted thief is unpredictable and can easily turn on the one who interrupts. The rape was a foreseeable event.

Respondents rely strongly on *Pietila v. Congdon*, 362 N.W.2d 328 (Minn.1985), contending that foreseeability is lacking. But *Pietila* involved a *private* residence unlike this case of *Roettger*. As stated in *Roettger*,

> *Pietila* is easily distinguished from the present case; it involved a private residence where the defendants neither acknowledged nor undertook any special duty to deter crime on the premises. Here, United is a large urban hospital that had hired a security staff to protect its patients and employees.

*Roettger*, 380 N.W.2d at 860.

CIC, APM, and AAP had a duty to provide a reasonably safe parking ramp. As the security firm hired by CIC, Leadens had a duty to perform their security function in a satisfactory manner.

### II.

■ There are sufficient facts asserted by appellants to raise a material issue of fact as to causation. First of all, a consultant testified that Curtis failed in providing adequate patrol and adequate lighting. Curtis failed to control the ramp's perimeters and elevator areas. Experts also testified to the lack of training of Leadens security people. Erickson further argues that Leadens failed to maintain a regular foot patrol schedule, or even utilize existing hardware such as punch clock devices to ensure patrolling. As to APM, there were also no signs alerting possible criminals of the existence of security or emergency communicators (telephones or emergency buttons) to alert security personnel nor was there closed circuit televisions. Many other security breaches were listed or noted by the consultants.

Moreover, the security guard on duty may have been negligent in not detecting the rape. The alleged rapist, Thomas Sabo, stated that he never saw a security person and if he had, he would have left. He also said the ramp was so dark, you could barely see but a few cars away. Therefore, there is certainly a fact issue as to a causal relationship between the breach of duty and the sexual assault.

■ Leadens also argues that it was an agent of CIC and therefore it was not liable for injury to anyone other than customers of CIC. Erickson was not a customer of CIC, but only a contract parker of AAP and APM. This argument would lead one to the conclusion that absolutely no security was provided by AAP and APM which is simply not true. Leadens' guard assumed the duty of provided security for the entire ramp. It certainly did not separate CIC customers for special protection.

### III.

■ There is also an issue raised by AAP claiming that they are not liable for the negligent acts of their subsidiary APM. There would seem, however, to be such a close relationship between the parent company AAP and its subsidiary APM to raise at least a fact issue of control.

All advertising came from AAP, the Employees' Handbook was issued by AAP. To facilitate and ensure the leasing agreement, AAP provided CIC with AAP literature. APM agreed to provide as consideration to CIC, AAP's design division. There are several instances of control exhibited by AAP, such as financial data, compilation, profit sharing, training, and others.

### IV.

Discretionary immunity is expressly codified in the Minnesota Torts Claims Act, Minn.Stat. § 3.736, which provides in part as follows:

> Subdivision 1. *General Rule.* The State will pay compensation for injury to or loss of property or personal injury or death caused by an act or omission of any employee of the state while acting within the scope of office or employment * * *. *Nothing in this section waives*

the defense of judicial or legislative immunity except to the extent provided in subd. 8 [pertaining to purchase of liability insurance].

\* \* \* \* \* \*

Subd. 3. *Exclusions.* Without intent to preclude the courts from finding additional cases where the state and its employees should not, in equity and good conscience, pay compensation for personal injuries or property losses, the legislature declares that the state and its employees are not liable for the following losses:

\* \* \* \* \* \*

(b) *Any loss caused by the performance or failure to perform a discretionary duty, whether or not the discretion is abused;*

*Id.* (emphasis added). The trial court found that the Parole Board's decision to parole Sabo and refer him to Nu–Way was the performance of a discretionary duty and therefore immune. We agree.

■ Appellant argues that while the parole decision may be discretionary, information-gathering preliminary to the parole process is "ministerial" and therefore subject to suit. The basis, however, for the parole decision is irrelevant to the question of immunity. The decision to parole is what is in question here, and the state is simply immune from liability from even a negligent decision. Recidivism is unpredictable, and to impose liability for a "mistake" would eliminate parole completely. We therefore agree that summary judgment in favor of the state was properly granted.

## V.

■ There is no evidence to indicate that Nu–Way had any ability to control Sabo nor was there any way Nu–Way could tell whether Sabo was dangerous. Nu–Way did not receive records from the state prior to December 7, 1983.

Nu–Way is a non-custodial home and Sabo was free to go about his business until 12:00 midnight when he was required to be in his room. He was only at Nu–Way for one hour prior to the rape on December 7, 1983, when he stopped to sign a release allowing Nu–Way to obtain copies from the Minnesota Department of Corrections. We therefore hold that no duty is owed by Nu–Way and summary judgment was properly granted.

## DECISION

Although we are inclined to believe that punitive damages should not be awarded in this case, we feel that such a decision should be made after appellants' case-in-chief is presented, and not by summary judgment.

AFFIRMED IN PART, REVERSED IN PART.