**APACHE PLAZA, LTD., Appellant,**

v.

**MIDWEST SAVINGS ASSOCIATION, formerly Midwest Federal Savings & Loan Association, Respondent.**

Nos. C8–89–1859, CX–89–2107.

Court of Appeals of Minnesota.

June 5, 1990.

Review Denied Aug. 23, 1990.

James P. Larkin, Thomas J. Seymour, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for appellant.

Thomas E. Harms, Thomas E. Schmidt, Hessian, McKasy & Soderberg, Minneapolis, for respondent.

Considered and decided by LANSING, P.J., and PARKER and RANDALL, JJ.

## OPINION

LANSING, Judge.

Apache Plaza challenges the trial court's denial of its post-trial motions in a breach of contract action against its lessee Midwest Savings Association. We reverse and remand for a new trial because we agree that the verdict was prejudicially affected by the incorrect instruction on the issue of substantial performance.

## FACTS

Apache Plaza is the managing general partner of a limited partnership that owns the Apache Plaza Shopping Center in St. Anthony, Minnesota. On August 10, 1972, Apache Plaza and Midwest executed a ground lease for a specific section of land located in the parking area of the shopping center. The lease provided Midwest a 30–year term plus the option of extending the lease for three consecutive 10–year terms. The lease authorized Midwest to build a bank on the property that conformed with the following provision:

> [Midwest] covenants that it will with reasonable diligence, and at its own expense, improve the leased premises by constructing a circular fifty-five (55) foot diameter building of one story along with an underground vault which is the approximate prototype of [Midwest's] building at Rosedale Shopping Center in Roseville, Minnesota, and the building at the corner of University and Snelling Avenue in St. Paul, Minnesota. Said building shall comply, in all respects, with all St. Anthony Village ordinances and codes, the construction plans and specifications must be acceptable to [Apache Plaza] and within the scope of [Midwest's] business.

Midwest built a branch office in compliance with this provision and operated it without incident until a tornado destroyed the building on April 26, 1984. With the assistance of an architect, Midwest developed a plan and submitted it to Apache Plaza for approval prior to reconstruction. Apache Plaza rejected the plan because the proposed new building was larger than 55

feet in diameter and would not be made of glass, unlike the original building and the prototypes referred to in the lease. Midwest proceeded with construction despite failure to reach an agreement and Apache Plaza brought this action.

At trial, Apache Plaza claimed that Midwest's reconstruction of the building after rejection of its plans breached the lease. Apache Plaza's evidence demonstrated that the new building is more than 65 feet in diameter rather than 55 feet as authorized by the lease. Correspondingly, the new building contains 3,800 square feet, compared with the original building's 2,500 square feet, an increase of more than 50 per cent.

Apache Plaza supplied expert testimony that Midwest would require more parking spaces for its customers due to the increased size of the building. This witness also testified that the current rental value of the land encumbered by Midwest's business, including land necessary for increased parking needs, is $23,094 per year. Midwest currently pays $6,000 per year in rent which results in damages from lost rent over the remaining term of the lease of $210,000. Additional damages of $50,000 were tied to a 15% blockage of a signboard on the facing of the shopping center.

On cross-examination, Apache Plaza's expert admitted that the lease addressed parking rights generally and did not limit the number of parking spaces. He conceded that the lease did not obligate Midwest to pay additional rent for any increase in the number of parking spaces and that no tenants had complained of parking problems caused by the new building or business losses caused by the blocked view of the sign.

Midwest claimed that construction of the new building did not breach the lease and that the new building substantially complied with the requirements of the lease. According to Midwest the differences between the new building and the old building were minor in nature and required by changes in the applicable building codes, municipal ordinances, and state regulations. Midwest's architect testified that the changes in design required by the new building code included: elimination of glass walls to conserve energy; construction of an elevator to provide access to the lower level vault and bathroom facilities for handicapped customers; providing stair access to the roof to service the air conditioning system; enclosing steel support beams within the walls of the building to promote energy efficiency; and moving stairs closer to the front entrance door for a more immediate fire exit.

The architect testified that in order to accommodate these changes he recommended moving the inner walls outward 10 feet 5 inches to the end point of the eaves on the original building. The architect further testified that the recommended changes were appropriate to comply with the current building code and architectural standards. On cross-examination, the architect admitted that a facility 55 feet in diameter could have been constructed in compliance with the building code but would have been cramped and was not considered functional by Midwest.

Alternatively Midwest maintained that even if the lease had been breached, Apache Plaza suffered no damages. This position was supported by expert testimony questioning the validity of Apache Plaza's evidence that Midwest's customers were using more parking spaces than before construction of the new building, that Midwest's building does not extend beyond the 90 by 110 foot pad of land it leased from Apache Plaza, and that parking rights bargained for in the lease did not increase the rent for additional parking.

In the verdict form, the jury was asked the following questions:

1. After Plaintiff refused to approve the plans and specifications submitted by Defendant, did Defendant breach the contract by constructing the present building without Plaintiff's approval?

 Please answer yes or no. _____

 Irrespective of your answer to Question No. 1, please answer Question No. 2.

2. What amount of money, if any, will fairly and adequately compensate Plaintiff for any breach of contract by Defendant?

The jury answered no to the first question and zero to the second question.

In its motion for JNOV Apache Plaza asserted that the jury's verdict was contrary to the evidence and in its request for a new trial asserted that the jury was improperly instructed on the issue of substantial performance. The trial court denied both motions.

## ISSUE

Did the trial court abuse its discretion by denying Apache Plaza's motion for a new trial or for judgment notwithstanding the verdict?

## ANALYSIS

■ The decision to grant or deny a motion for a new trial is within the trial court's discretion and will not be reversed on appeal unless that discretion has been abused. *See Lindstrom v. Yellow Taxi Co. of Minneapolis*, 298 Minn. 224, 230, 214 N.W.2d 672, 677 (1974). Jury instruction errors are not grounds for reversal unless the error is prejudicial. *Lewis v. Equitable Life Assurance Society*, 389 N.W.2d 876, 885 (Minn.1986). "Where the instructions are misleading and conflicting on a material issue, a new trial should ordinarily be granted * * *." *Lindstrom*, 298 Minn. at 229, 214 N.W.2d at 676.

■ The trial court gave the jury the following instruction on breach of contract and substantial performance:

A failure without legal justification to perform all or a substantial part of what is promised in a lease is a breach of that lease. A party has performed a substantial part of what is promised in the lease if, as a result of its performance, the landlord has received all of the essentials necessary to accomplish the things promised, and any deviations are not so material that the landlord does not get substantially what was bargained for.

Apache Plaza contends this instruction is deficient because it does not state that intentional deviation from the terms of a lease precludes application of the substantial performance doctrine.

In *Ylijarvi v. Brockphaler*, 213 Minn. 385, 390, 7 N.W.2d 314, 318 (1942), the supreme court explained the doctrine of substantial performance:

[S]ubstantial performance means performance of all the essentials necessary to the full accomplishment of the purposes for which the thing contracted for has been constructed, except for some slight and unintentional defects which can be readily remedied or for which an allowance covering the cost of remedying the same can be made from the contract price. *Deviations or lack of performance which are either intentional or so material that the owner does not get substantially that for which he bargained are not permissible.*

(Emphasis added.)

Apache Plaza points out that Midwest's architect conceded on cross-examination that a building 55 feet in diameter could have been constructed in compliance with the applicable codes. Based on this testimony, Apache Plaza argues that Midwest's decision to build a facility larger than 55 feet in diameter was not compelled by changes in building codes and state regulations, but was an intentional choice by Midwest to expand its operation at the shopping center. Therefore, Apache Plaza argues, the trial court erred by failing to instruct the jury that the doctrine of substantial performance does not authorize intentional deviations from the terms of a contract.

The supreme court addressed a similar issue on substantial performance in *Material Movers, Inc. v. Hill*, 316 N.W.2d 13 (Minn.1982). In *Hill* the installer of a barn floor and dairy barn equipment left the jobsite after a dispute on performance and did not complete the contract. The jury found that the installer had breached the contract, but had substantially performed. On appeal, Hill claimed that the trial court erred by refusing to instruct the jury "that

a contractor who wilfully or intentionally deviates from the terms of a contract cannot recover on it." *Id.* at 18. The supreme court agreed and reversed the jury's verdict. The court noted that some evidence in the record supported Hill's claim that the installer intentionally deviated from the terms of the contract, while other evidence suggested consensual or unintentional deviation. The supreme court concluded:

> This contradictory evidence required submission of the question of intent to the jury and failure to give the appropriate instruction was prejudicial.

*Id.* at 18. The court remanded the case for a new trial.

As in *Hill,* the evidence on Midwest's intent in connection with construction of the new building was contradictory. Midwest's architect claimed that certain changes in the structure of the new building were required by new regulations and building codes, despite his admission that a building 55 feet in diameter could have been constructed in compliance with the applicable codes. This evidence could support a finding of intentional deviation.

■ The instruction on substantial performance would allow the jury to find that Midwest substantially performed its obligations under the lease even if Midwest intentionally deviated from its terms. This is an erroneous instruction because, under Minnesota law, the doctrine of substantial performance is inapplicable in cases of intentional deviation from the terms of a contract. *See Hill,* 316 N.W.2d at 18; *Yli-jarvi,* 213 Minn. at 390, 7 N.W.2d at 318. The centrality of the issue of substantial performance causes us to conclude that the failure to instruct the jury on the intentional deviation exception to the substantial performance doctrine requires a new trial.

■ Midwest maintains that Apache Plaza was not prejudiced by any error in the instruction. This claim is premised on the jury's finding that Apache Plaza suffered no damages as the result of any breach of the lease. Apache Plaza contends that the jury would have reached a different result on the question of damages had the jury been properly instructed be-

cause the damages question implicitly requires a finding of breach before damages may be awarded.

We agree with Apache Plaza. The special verdict question on damages asked the jury:

> What amount of money, if any, will fairly and adequately compensate plaintiff *for any breach of contract by defendant?*

(Emphasis added.)

The jury could have construed this language to require a finding of breach as a precondition to an award of damages. Although the jury was instructed to answer the damages question without regard to its finding on the issue of breach, the wording may have led the jury to believe that the answer should be zero unless a breach of contract occurred. We reject Midwest's claim that Apache Plaza could not have been prejudiced by the erroneous jury instruction. If an instruction is erroneous and an appellate court is unable to determine whether the error affected the jury, a new trial should be granted. *Lieberman v. Korsh,* 264 Minn. 234, 242, 119 N.W.2d 180, 186 (1962).

Apache Plaza alternatively claims that the evidence was insufficient to support the jury's verdict. Although testimony was contradictory on the necessity of expanding the building, we cannot hold as a matter of law that the evidence was insufficient to support the jury's finding that no breach of the lease occurred. *See Hauenstein v. Loctite Corp.,* 347 N.W.2d 272, 275 (Minn. 1984) (jury's answer to special verdict question will not be set aside unless palpably contrary to the evidence). However, because we conclude that a properly instructed jury could have rejected Midwest's substantial performance claim, the sufficiency of the evidence does not control the decision.

Apache Plaza also asserts that ejectment is the only appropriate remedy. It is unnecessary for us to address the merits of this claim in view of our conclusion that Apache Plaza is entitled to a new trial. Apache Plaza is free to make this argument to the trial court on remand.

## DECISION

The trial court's erroneous jury instruction on the issue of substantial performance prejudicially affected Apache Plaza and requires a new trial.

Reversed and remanded.

RANDALL, Judge, dissenting.

I respectfully dissent from the majority's conclusion that a new trial is necessary. I would affirm the jury's verdict based on its finding that Apache Plaza suffered no damages as the result of any breach that may have occurred. As the majority agrees, the evidence supports the jury's verdict on damages based on the conflicting expert testimony presented at trial. *See Sandhofer v. Abbott–Northwestern Hospital*, 283 N.W.2d 362, 367 (Minn.1979) (jury may accept or reject expert testimony; decision will not be disturbed on appeal).

I disagree with the majority's conclusion that, despite the finding of no damages, a new trial is needed. The majority engages in speculation when it states that the jury could have construed the trial court's instructions as requiring a finding of a breach as a pre-condition to considering the question of damages. The trial court gave the jury the standard instruction (unchallenged· and not appealed) to answer the damage question without regard to its finding on the issue of breach of contract. That instruction is given time after time in Minnesota. Although the bench and bar often speculate, probably correctly at times, that the amount of money a jury awards is sometimes tied to its assessment of the egregiousness of the defendant's conduct, a court of review cannot speculate that a jury, being told to answer a damage question without regard to its finding on fault, disregarded the trial court's explicit instruction. Here, the majority appears to find that, as a matter of law, the jury must have disregarded the trial court's clear instruction and therefore a new trial on liability is mandated. I disagree.

Appellant argues vigorously that the trial court's instructions were improper. I do not necessarily agree, but even assuming for the sake of argument that the instruction was improper, a new trial is not always required when the jury's ultimate determination is correct. *See Becker v. Alloy Hardfacing & Engineering Co.*, 401 N.W.2d 655, 660 (Minn.1987); *Keefer v. Al Johnson Construction Co.*, 292 Minn. 91, 103, 193 N.W.2d 305, 312 (1971). A breach of contract which causes no loss to a plaintiff will not sustain a claim for damages. *Gilomen v. Southwest Missouri Truck Center, Inc.*, 737 S.W.2d 499, 501 (Mo.Ct. App.1987) A plaintiff must prove damages before a recovery for breach is warranted. *See Farmington Plumbing & Heating Co. v. Fischer Sand & Aggregate, Inc.*, 281 N.W.2d 838, 842–43 (Minn.1979). The record is clear that the jury rejected Apache Plaza's claim that it was damaged by Midwest's breach of the lease. The jury was instructed in the special verdict form to answer the damages question regardless of its answer to the question on breach. The jury complied with this instruction and answered zero to the damage question. The evidence is sufficient to support this finding.

The jury's finding that Apache Plaza suffered no damages in this case renders the alleged instructional error, if any, harmless. *Becker*, 401 N.W.2d at 660; *see Venes v. Professional Service Bureau, Inc.*, 353 N.W.2d 671, 676 (Minn.App.1984) (where evidence is sufficient to support jury's verdict, erroneous instruction on one issue held insufficient to warrant reversal).

I would affirm the jury's verdict.