Debra COOPER, Trustee for the Surviving Next of Kin of Jeremy and Joe Cooper, Deceased; and Debra Cooper, Trustee for the Surviving Next of Kin of Jarrod James Cooper, Deceased, Plaintiffs,

v.

LAKEWOOD ENGINEERING AND MANUFACTURING COMPANY, McMillan Manufacturing Company, and W.W. Grainger, Inc., Defendants.

Civ. No. 3–92–363.

United States District Court,
D. Minnesota,
Third Division.

March 18, 1994.

Galen J. Vaa, Gjevre, McLarnan, Hannaher, Vaa, Skatvold & McLarnan, Moorhead, MN, for plaintiffs.

Dean A. Hoistad, Gunhus & Grinnell, Moorhead, MN, for defendant Lakewood Engineering and Mfg. Co.

James A. O'Neal, Faegre & Benson, Minneapolis, MN, for defendants McMillan Mfg. Co. and W.W. Grainger, Inc.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Plaintiff Debra Cooper, acting as Trustee for the surviving next of kin of decedents Jeremy Joe Cooper and Jarrod James Cooper ("Cooper"), commenced this wrongful death diversity action against defendants

Lakewood Engineering and Manufacturing Company ("Lakewood"), McMillan Electric Company ("MEC"), McMillan Manufacturing Company ("MMC"), and W.W. Grainger, Inc. ("Grainger"); Cooper alleges that the defendants are liable under theories of strict liability and negligence for a 1991 fire that resulted in the deaths of Jeremy Joe Cooper and Jarrod James Cooper. Before the Court are (1) Lakewood's Motion for Summary Judgment, and (b) Grainger's Motion for Summary Judgment.

## Background

### The Parties

Debra Cooper is the mother of the two decedents; she is the Trustee for the next of kin of both decedents: herself, the decedents' father, Roger Cooper, and the decedents' brothers, Jentry Cooper and Joshua Cooper (collectively, the "Coopers").

Lakewood is a fan manufacturer located in Chicago, Illinois.

Grainger is a distributor of industrial parts and products located in Chicago, Illinois. On August 1, 1972, Grainger acquired all of the capital stock of MMC in a stock-for-stock transaction.

At all times relevant to this action, MMC was a Minnesota corporation, the principal business of which was manufacturing electrical motors in Minnesota and Wisconsin; MMC was dissolved on November 8, 1976.

### The Fire

In July of 1991 the Coopers were residing in a trailer home in Glyndon, Minnesota. On July 21, 1991, a fire destroyed most of the trailer home and resulted in the deaths of Jeremy Cooper and Jarrod Cooper.[1]

Deputy State Fire Marshal Investigator Dale T. Volstad investigated the cause and location of origin of the fire. Volstad determined that the fire had originated in the lower bunk of a set of bunk beds located in the bedroom where Jarrod Cooper died, and that the likely cause of the fire was the operation of an electric box fan that was found on the bed, specifically, an overheating of the cord leading to the fan. Subsequent investigations by the Cooper's property insurer, American Family Insurance, however, indicated that the fan motor may have been the cause of the fire.

Cooper commenced this suit against Lakewood, claiming that it manufactured the electric fan that allegedly caused the fire; Cooper alleged theories of strict liability and negligence in the design, manufacture, fabrication, assembly, construction, marketing and sale of the electric fan. Thereafter, Cooper filed an Amended Complaint, alleging the same strict liability and negligence claims against MEC[2] and MMC based upon the claim that one of them manufactured the motor in the electric box fan. Cooper also added Grainger as a defendant, alleging that it was liable as a result of having (a) assumed all of the civil liabilities of MMC, or (b) been the transferee of MMC's civil liability.

## Discussion

### I. Standard of Decision

■ Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Under that Rule:

[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party. *See* *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

---

1. A description of the fire scene is not necessary to resolve the instant motions; however, the Court notes that Jeremy Cooper's body was found in a bedroom located on the east end of trailer home and Jarrod Cooper's body was found in a bedroom located two rooms west of the bedroom where Jeremy Cooper died (a bathroom separated the two bedrooms).

2. MEC is a Minnesota corporation that manufactures electric motors. On July 26, 1993 the parties stipulated to the dismissal of MEC without prejudice.

242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ Initially, the movant bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In evaluating the movant's showing, the evidence of the non-moving party is to be believed and all justifiable inferences are to be drawn in a light most favorable to that party. *Matsushita Elec. Indus. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986); *Liberty,* 477 U.S. at 255, 106 S.Ct. at 2513; *Trnka v. Elanco Prod.,* 709 F.2d 1223, 1225 (8th Cir.1983). Where a moving party, with whatever it provides the court, makes and supports a motion for summary judgment in accordance with Rule 56, a party opposing the motion may not rest upon the allegations or denials of its pleadings; rather, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. at 2514; *Fischer v. NWA, Inc.* 883 F.2d 594, 599 (8th Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990). However, the nonmovant is not obligated to prove in its favor an issue of material fact. *Unigroup v. O'Rourke Storage & Transfer,* 980 F.2d 1217, 1220 (8th Cir.1992) (citations omitted).

## II. Lakewood's Motion for Summary Judgment

Lakewood contends that it is entitled to summary judgment on Cooper's claims against it because "[t]he clear facts as they have been developed in discovery leave no doubt that the fan discovered in the Cooper fire was neither designed, manufactured, fabricated, assembled, marketed nor sold by Lakewood." (Mem. Supp. Summ. J., at 2.) The basis for Lakewood's argument is its contention that the fan found in the fire had

been so "radically altered or modified with different component parts of different ages and types as to make the fan unidentifiable as a Lakewood product." *Id.* at 2–3. Lakewood's motion will be denied.

■ Debra Cooper and Roger Cooper have given deposition testimony that the fan involved in the fire was purchased in 1987 and had not been altered in any way prior to the fire on July 21, 1991. (*See* Mem. Opp'n Mots. for Summ. J., at 17.) In light of this testimony—and the other facts Cooper has identified as creating an issue for trial—this Court can only conclude that Cooper has identified specific facts upon which a jury could determine that Lakewood manufactured the fan. The Court's task on a motion for summary judgment is not to weigh facts or evaluate the credibility of affidavits and other evidence. Rather, the Court need only determine whether the record, as identified by the parties, shows the existence of a real controversy over a material issue. *AgriStor Leasing v. Farrow,* 826 F.2d 732, 733 (8th Cir.1987). Because Lakewood and Cooper have offered two versions of the fan's origin, both of which find support in the summary judgment record, the issues relevant to Cooper's claims against Lakewood are prototypical jury issues that must be resolved at trial.[3]

## III. Grainger's Motion for Summary Judgment

Grainger's Motion for Summary Judgment is based on its contention that it is not, as a matter of law, a successor in liability to MMC under any principle of corporate successor liability.[4] In support of its contentions, Grainger makes two arguments: (1) it is not liable under the Minnesota Business Corporation Act, and (2) it is not liable under traditional principles of corporate successor liability.

### A. Liability under Minnesota's Business Corporations Act

As discussed above, Grainger acquired all of the stock of MMC in a 1972 stock-for-stock

---

3. Lakewood also has asserted that it should be granted summary judgment because Cooper has engaged in "spoilation of evidence." The Court finds Lakewood's spoilation argument without merit.

4. It is undisputed that Grainger's only exposure is as the successor to MMC; Grainger had no direct involvement with the manufacture of the fan in question.

transaction, thereafter operating MMC as its wholly owned subsidiary; MMC continued its manufacturing operations and produced electric motors for approximately three years. On October 6, 1975, Grainger, as the sole stockholder of MMC, and MMC, executed an Agreement and Plan of Liquidation ("Plan") to institute voluntary dissolution proceedings for MMC under the Minnesota Business Corporations Act ("MBCA"), Minn.Stat. § 301.47.[5]

As a part of the Plan, Grainger agreed to (1) provide for payment of all of McMillan's "just debts or obligations" or make "provision for such payment," and (2) arrange for any remaining assets to be distributed to Grainger in redemption and cancellation of all of MMC's issued and outstanding capital.[6] *Id.* On October 6, 1975 Grainger and MMC executed an Assumption of Liabilities Agreement ("Assumption Agreement") by which Grainger expressly agreed to "assume[ ] and unconditionally agree[ ] to pay and discharge, at the time and in the manner as [MMC] is obligated so to do, but only to the extent of the property and assets distributed" to it by MMC, all of MMC's obligations, duties, liabilities and debts. *Id.* Exh. F.

MMC commenced voluntary dissolution proceedings on October 10, 1975 by filing a resolution for dissolution in accord with Minn.Stat. § 301.47. After the affairs of MMC were wound up and completed, MMC filed its Certificate of Trustee on November 8, 1976, *id.* Exh. E, which had the effect of officially dissolving MMC under MBCA. *See* Minn.Stat. § 301.56. Following its dissolution, MMC remained liable to suit on its obligations and liabilities for a three year period commencing on November 8, 1976 and terminating on November 8, 1979. Minn. Stat. § 300.59. After November 8, 1979 MMC was "dead and buried," i.e., it lacked the capacity to be sued or be found liable on a claim.

■ Grainger contends that it is not liable to Cooper merely because it was MMC's sole shareholder, since Cooper's claim arose well after November 8, 1979. As MMC has no liability to Cooper, Grainger continues, its shareholder status alone does not leave it liable to Cooper. Mem. Supp. Mot. Summ. J., at 9 (citing *Onan Corp. v. Industrial Steel Corp.*, 770 F.Supp. 490, 496 (D.Minn.1989), *aff'd* 909 F.2d 511 (8th Cir.) (table), *cert. denied*, 498 U.S. 968, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990)). Cooper does not seriously contest otherwise and the Court agrees with Grainger that the MBCA precludes Grainger from being liable to Cooper based solely upon its status as a former *shareholder* of MMC.

If Grainger is not liable for MMC's obligations as a result of being MMC's sole shareholder, then its liability to Cooper must be premised on some other doctrine. Whatever the asserted doctrine, Cooper's ultimate burden is to demonstrate that Grainger can be held liable for the claim at issue here: a products liability claim arising after MMC lost its capacity to be sued by or found liable to users of its products. On summary judgment, the question before the Court is whether Cooper has identified a triable issue with regard to any asserted doctrine of liability.

### B. Corporate Successor Liability

■ The first basis for holding Grainger liable is the corporate successor doctrine. Under Minnesota law, the purchaser of a manufacturer's assets is not liable for the liabilities of that manufacturer unless one of four situations exists: (1) the purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to a consolidation or merger of the corporations; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability. *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn.1989) (quoting *J.F. Anderson Lumber Co. v. Myers*, 296 Minn. 33, 37–38, 206 N.W.2d 365, 368–69 (1973)). As noted above, only the

---

5. Minnesota Statutes Chapter 301, subsections .01 through .67 was repealed by 1981 Minn. Laws, ch. 270, § 142, codified at Minn.Stat. §§ 302A.001 to .917 (1992).

6. After MMC formally dissolved, Grainger conveyed MMC's remaining assets to other corporations and entities, including another of its subsidiaries, Doerr Electric Corporation.

first exception identified in *J.F. Anderson* is at issue here.[7]

### 1. Express Assumption

In this case, determining the liabilities Grainger expressly assumed is governed by the Assumption Agreement, since under that Agreement, Grainger expressly assumed certain liabilities of MMC. As discussed above, the Assumption Agreement provides, in pertinent part:

> Grainger hereby assumes and unconditionally agrees to pay and discharge, at the time and in the manner as [MMC] is obligated so to do, but only to the extent of the property and assets distributed to Grainger by [MMC] pursuant to the dissolution of [MMC], any and all of the obligations, duties, liabilities, taxes, unemployment contributions, fees, and debts of [MMC], contingent or absolute, accrued or unaccrued, or that may be properly assessable against [MMC].

Schuette Aff., Exh. F.

Grainger contends that the terms of the Assumption Agreement are clear and unambiguous and that two separate clauses of the Assumption Agreement demonstrate, as a matter of law, that it did not expressly assume MMC's liability to Cooper: (1) Grainger "assumes and unconditionally agrees to pay and discharge, *at the time and in the manner as [MMC] is obligated so to do,*" and (2) "but only *to the extent of the property and assets distributed to Grainger by [MMC].*" *Id.* (emphasis added).

The first clause at issue is the "time and manner" clause which Grainger asserts precludes it from having successor liability in this case. Under that provision, Grainger contends, its duty to pay a liability arose only if MMC properly could have been called upon to pay that liability; thus, as Cooper cannot seek relief from MMC (and could not therefore "obligate" MMC to pay or discharge any liability), Grainger is not obligated to pay or discharge any liability that might be assigned to MMC.

Cooper[8] responds that the meaning of the "time and manner" clause is ambiguous, arguing that other documents, the deposition testimony of the MMC's counsel, and the otherwise broad language of the Assumption Agreement itself, render the meaning of the time and manner clause open to more than one reasonable interpretation. Specifically, Cooper argues that other documents indicate that Grainger was assuming, without limitation as to time, all of MMC's "liabilities"; as a result, a reasonable reading of the time and manner clause is "that it simply refers to when the debt becomes due, and the manner of payment of the debt." (Mem. Opp'n Mot. Summ. J., at 13.)

Whether a contract is or is not ambiguous is a question of law which must be made solely on the language of the contract. *Blattner v. Forster,* 322 N.W.2d 319, 321 (Minn.1982). A contract term is ambiguous if "the language used reasonably is susceptible of more than one meaning...." *Id.* If a contract is unambiguous, its interpretation is a question of law that must be made by examining only the contract itself, *Carl Bolander & Sons, Inc. v. United Stockyards Corp.,* 298 Minn. 428, 433, 215 N.W.2d 473, 476 (1974); however, if a contract term is ambiguous, the meaning of the contract is a question of fact to be determined by the finder of fact and extrinsic evidence can be considered to determine the parties' intent. *Material Movers, Inc. v. Hill,* 316 N.W.2d 13, 17 (Minn.1982).

After examining the parties' positions (and the facts identified therein) under the proper summary judgment analysis, the

---

7. Cooper does not contend that any of the remaining three exceptions applies; thus, it is unnecessary to consider them here. The Court notes, however, that it would have little difficulty concluding that none of the remaining three exceptions applies here; Grainger purchased MMC's assets in connection with its dissolution, and, as a result, MMC ceased to operate after the sale was completed.

8. Both Cooper and Lakewood have filed memoranda opposing Grainger's Motion for Summary Judgment. Because the arguments each party raises are substantially similar, and because it would not advance the Court's analysis to separately identify which party has made a given argument, the Court will refer to "Cooper" when discussing an argument raised in opposition to Grainger's motion.

Court agrees with Grainger that the time and manner clause is unambiguous. The issue here is not whether the Assumption Agreement can be read as providing that Grainger expressly assumed liability for any products liability claims brought by users of MMC's products; if it were, this Court would have little difficulty concluding that Grainger did assume those liabilities. In contrast, the issue here is the temporal scope of that assumption; that is, whether the Assumption Agreement reasonably can be interpreted as providing that Grainger assumed liability for all products liability claims brought by users of MMC's products, even those claims arising after MMC lost its capacity to be sued on November 8, 1979.

Examining, as it must, the language of the Assumption Agreement, the Court concludes that the time and manner clause unambiguously provides that Grainger agreed to pay and discharge any obligations or liabilities that MMC would have to pay, and only those liabilities. The time and manner clause provides that Grainger is obligated to pay liabilities and obligations at the time and in the manner as MMC *"is obligated* so to do." The only reasonable interpretation of this language is that Grainger is not obligated to pay any obligations or liabilities that MMC is not obligated to pay. Other language of the Assumption Agreement supports this interpretation. The second "Whereas" clause provides that "there may be certain liabilities of [MMC] known or unknown which Grainger agrees to assume and pay *when due"* Schuette Aff., Exh. F (emphasis added).

The phrase "when due" limits Grainger's assumption to those obligations that become present obligations of MMC. Similarly, the final two lines of the "Therefore" clause provides that Grainger agreed to pay obligations or liabilities, that "may be properly assessable against [MMC]." *Id.* If a tax, fee, or other obligation cannot be assessed against MMC, Grainger did not assume the liability for that obligation.[9]

■ In short, the time and manner clause contained in the Assumption Agreement is clear and unambiguous and it provides that Grainger agreed to assume the liabilities, debts, obligations that MMC owed or might come to owe.[10] After the three-year window on MMC's corporate capacity expired, *see supra,* Part III.A, MMC did not and could not "owe" any obligations or debts, whether lying in contract or tort, nor could such liabilities become "due." Accordingly, as MMC is not (indeed, cannot be) liable to Cooper, and cannot therefore be obligated to pay any liability to Cooper, the obligation necessary to trigger Grainger's duty to assume the obligation does not exist. Under these circumstances, Grainger did not, as a matter of law, expressly agree to assume liability for Cooper's claim.[11]

### 2. Implied Assumption

Cooper also contends that certain acts engaged in by Grainger after the Assumption Agreement was signed, specifically, Grainger's (a) maintenance of insurance coverage on claims such as those Cooper has brought

9. The Assumption Agreement would be ambiguous if it failed to connect Grainger's assumption of liability to obligations that "become due" or that MMC is "obligated" to pay in some manner and at some time. In addition, Grainger could be said to have unambiguously assumed liability for Cooper's claims if the time and manner clause could reasonably be interpreted as providing that Grainger would pay a liability "at the time and in the manner as MMC *is obligated so to do or would be obligated so to do if it were subject to the claim."* The plain language of the time and manner clause, however, does permit this interpretation.

10. Cooper has offered nothing to support a determination that the "time and manner" clause is ambiguous. Assuming that the identified portions of Schuette's deposition testimony and oth-

er documents executed near the date on which the Assumption Agreement was signed ((a) the Minutes from the October 20, 1975 meeting of Grainger's Board of Directors, and (b) the Liquidation Agreement) are relevant under the parole evidence rule, *see Material Movers, Inc. v. Hill,* 316 N.W.2d 13, 17 (Minn.1982), those documents and statements are consistent with the Court's interpretation of the Assumption Agreement and the time and manner clause.

11. Having determined that Grainger did not assume liability for Cooper's claims against MMC, it is unnecessary to determine whether Grainger's liability for this claim has been exhausted under the "to the extent of the value of the property and assets" clause in the Assumption Agreement.

in this case, and (b) defending and settling similar cases arising from MMC's products, all of which arose after the three-year liability period had expired, create an issue for trial concerning whether Grainger *impliedly* agreed to assume liability for products liability claims arising after MMC lost its capacity to be sued. The Court disagrees.

Under certain circumstances, a contract may be implied from the conduct of the parties. *Carlock v. Pillsbury Co.*, 719 F.Supp. 791, 854 (D.Minn.1989) (citing *Gryc v. Lewis*, 410 N.W.2d 888, 891 (Minn.Ct.App. 1987). A contract implied-in-fact is one inferred from the circumstances and conduct of the parties. *Gryc*, 410 N.W.2d at 891 (citing *Roberge v. Cambridge Co-op Creamery Co.*, 248 Minn. 184, 189, 79 N.W.2d 142, 146 (1956)). Like an express contract, an implied-in-fact contract requires that the party asserting its existence prove all of the essential elements of a contract; thus, it differs from an express contract mainly in the evidence offered to prove mutual assent. *Gryc*, 410 N.W.2d at 891. As with any contract, the test to determine whether the parties formed an implied contract is an objective one. *Id.*

In this case, the only parties to a contract concerning Grainger's assumption of MMC's liabilities could be MMC and Grainger. As a result, Grainger's acts of (a) maintaining a policy of insurance to cover claims arising from MMC's products after MMC could no longer be sued, and (b) defending three lawsuits based on such claims, could not be evidence of an implied agreement between Grainger and MMC for the simple reason that all of these acts post-dated November 8, 1979. For the same reasons Grainger's acts could not constitute a "modification" of the Assumption Agreement— there was no other party to assent to the modification.[12] There are, therefore, no genuine issues of material fact and Grainger is entitled to judgment as a matter of law that it did not impliedly agree to assume liability for Cooper's claim.

Because Grainger did not assume, either expressly or impliedly, liability for products liability claims arising after MMC lost its capacity to be sued, the first *J.F. Anderson* exception to the general rule of successor liability does not apply to Grainger and Grainger is entitled to summary judgment on Cooper's claim that Grainger is liable to Cooper under the corporate successor doctrine.

### C. Piercing the Corporate Veil

In addition to contending that Grainger could be liable under the doctrine of corporate successor liability, Cooper argues that Grainger could be liable for MMC's obligations if Grainger operated MMC as an "instrumentality." Cooper further contends there are genuine issues of material fact as to whether MMC was an instrumentality of Grainger, thereby precluding an award of summary judgment to Grainger. In its reply memorandum, Grainger argues that Cooper has failed to identify sufficient facts creating a triable issue on this issue. The Court agrees.

Under Minnesota law, the instrumentality doctrine is a means of holding a party, e.g., a shareholder, liable for the debts or obligations of a corporation by "piercing" the "veil" created by the separate legal existence of the corporation.[13] Determining whether a defendant should be liable under the instrumentality doctrine requires (1) analyzing the reality of how the corporation functioned and the party's relationship to that operation, and (2) finding injustice or fundamental unfairness. *Minnesota Power*

---

**12.** To the extent that Cooper can be said to argue that these same acts render the meaning of the Assumption Agreement ambiguous, *see supra*, Part III.B.1, the Court disagrees.

**13.** Originally, the instrumentality doctrine was used to hold *shareholders* liable for the acts of a corporation. Although only Minnesota's intermediate appellate court has considered the instrumentality doctrine in connection with the parent-subsidiary relationship, *see Erickson v.*

*Curtis Inv. Co.*, 432 N.W.2d 199, 202 (Minn.Ct. App.1988), *aff'd* 447 N.W.2d 165 (Minn.1989); *In re Hibbing Taconite Co.*, 431 N.W.2d 885, 893 (Minn.Ct.App.1988), this Court can discern no reason why the Supreme Court of the State of Minnesota would not likewise apply the doctrine to a parent-subsidiary relationship. *See Glanzer v. St. Joseph Indian School*, 438 N.W.2d 204, 206–07 (S.D.1989).

*v. Armco, Inc.,* 937 F.2d 1363, 1367 (8th Cir.1991) citations omitted (applying Minnesota law).

    Factors which must be considered in analyzing the first prong include: insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records and existence of corporation as merely facade for individual dealings.

*Victoria Elevator Co. v. Meriden Grain Co.,* 283 N.W.2d 509, 512 (Minn.1979) (citation omitted); *see Minnesota Power,* 937 F.2d at 1367. In contrast, the "injustice or fundamental unfairness" prong examines the relationship of the plaintiff to the corporation; because piercing the corporate veil is equitable in nature, *G.G.C. Co. v. First Nat'l Bank of St. Paul,* 287 N.W.2d 378, 384 (Minn.1979), that prong requires a showing of injustice or fundamental unfairness, as by proof that the subsidiary has been operated as a constructive fraud or in an unjust manner.[14] *White v. Jorgenson,* 322 N.W.2d 607, 608 (Minn.1982) (citing *West Concord Conservation Club v. Chilson,* 306 N.W.2d 893, 898 n. 3 (Minn. 1981)).

    Grainger is entitled to summary judgment on this issue because Cooper has failed to produce any evidence relating to the "injustice or fundamental unfairness" prong of the instrumentality test. Cooper's only argument in support of a triable issue on the injustice element is that "Grainger's decision to dissolve [MMC], its wholly-owned subsidiary, leaves the plaintiff without a remedy against [MMC]" which, according to Cooper, "would clearly work an injustice." (Mem. Opp'n Mot. Summ. J., at 8.) The first clause of Cooper's argument does little more than state the truth; as for the second clause, Minnesota law is clear that the plaintiff's misfortune of being deprived of a potentially liable party is not, standing alone, an injustice. An "injustice" warranting the equitable remedy of piercing the corporate veil exists only when the subsidiary was operated to constitute a constructive fraud or in an unjust manner. *See e.g., Minnesota Power,* at 1368 (controlling corporation's failure to disclose material facts to plaintiff supported determination that corporate veil should be pierced). In this case, Cooper has not offered any facts tending to establish that (a) Grainger operated MMC as a constructive fraud or in an unjust manner, (b) due to the manner in which Grainger operated MMC, failing to pierce the corporate veil will result in an injustice.[15] Accordingly, there are no genuine issues of material fact as to the second element of her instrumentality claim[16] and Grainger is entitled to judgment as a matter of law that the corporate veil between it and MMC will not be pierced under the "instrumentality" doctrine.

### Conclusion

Based upon the foregoing, and the records, files, and proceedings herein, including the briefs and arguments of counsel, **IT IS ORDERED** that:

1. defendant Lakewood Engineering and Manufacturing Corporation's Motion for Summary Judgment (Doc. No. 28) is **DENIED;** and

---

14. However, proof of strict common law fraud is not required to establish the second prong of the instrumentality test. *West Concord Conservation Club v. Chilson,* 306 N.W.2d 893, 898 n. 3 (Minn. 1981).

15. The only case Cooper cites in support of its position, *In re Related Asbestos Cases,* 578 F.Supp. 91, 92–93 (N.D.Cal.1983), was decided under the law of the State of California. A review of the court's discussion of California law makes clear that California's exception to the general rule of successor liability is based upon considerations that are not a part of the doctrine applied in Minnesota. Accordingly, *Asbestos Cases* does not control here.

16. Having determined that Cooper has failed to create an issue for trial concerning the second element of its instrumentality claim, the Court need not and does not determine whether a triable issue exists with regard to the first element of an instrumentality claim: whether MMC was a mere instrument of Grainger's operation. However, the Court has serious reservations as to whether a triable issue exists with regard to that issue.

2. defendant W.W. Grainger, Inc.'s Motion for Summary Judgment (Doc. No. 29) is **GRANTED.** Plaintiffs' claims against defendant W.W. Grainger, Inc. are **DISMISSED WITH PREJUDICE.**