Ronald L. TRONDSON, et al., individually and as Limited Partners of Grand Chicago Limited Partnership, Appellants,

v.

Duane JANIKULA, Ronald L. Knuth, 3939 Limited Partnership, Floyd C. Sjostrand, et al., Clara A. Axberg, et al., Joseph C. Lindseth, et al., Donald J. Erickson, et al., Grand Chicago Partnership, Coin–Controlled Washers, Inc., Respondents.

No. C1–89–780.

Court of Appeals of Minnesota.

Oct. 10, 1989.

Review Granted Dec. 15, 1989.

**415**

John E. Brandt, Paul B. Kilgore, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, for Ronald L. Trondson, et al., individually and as Limited Partners of Grand Chicago Limited Partnership.

Duane Janikula, Fifty Lakes, pro se.

Ronald L. Knuth, Shorewood, pro se.

3939 Limited Partnership, Shorewood, pro se.

Sharon L. Brenna, Thomas P. Stoltman, Larkin, Hoffman, Daly & Lindgren, Bloomington, for Floyd C. Sjostrand, et al.

Suzanne M. Sandahl, Minneapolis, for Clara A. Axberg, et al.

Dennis L. Peterson, Minneapolis, for Joseph C. Lindseth, et al.

Patrick J. McGuigan, St. Paul, for Donald J. Erickson, et al.

Grand Chicago Partnership, Fifty Lakes, pro se.

Coin–Controlled Washers, Inc., Minneapolis, pro se.

Heard, considered and decided by WOZNIAK, C.J., and HUSPENI and RANDALL, JJ.

## OPINION

HUSPENI, Judge.

In an action to quiet title the trial court found that the general partner of Grand Chicago Limited Partnership had authority to convey an assignment of contract for deed to respondents Floyd and Arlene Sjostrand and that this assignment created an equitable lien in favor of the Sjostrands. Appellants, the limited partners in the Grand Chicago Limited Partnership, appeal. We affirm in part and reverse in part.

## FACTS

Appellants Ronald Trondson, William and Karen Kendrick, Jerry Olson, Robert Shimota and Kenneth and Garnita Wencl are limited partners in Grand Chicago Limited Partnership (the Partnership), formed in 1982. The Partnership had one asset, an apartment building located at 3939 Chicago Avenue South, which it was purchasing on a contract for deed from respondents, the Ericksons. The Partnership had purchased the vendee's interest in the property from one Grand Chicago Partnership (GCP) in October 1982 and received a quit-claim deed from GCP at that time.

In March 1986 the Partnership's sole general partner, respondent Duane Janikula, advised appellants that he had entered into a purchase agreement to sell the apartment building to another partnership. Since Janikula was also one of two general partners in the vendee partnership, 3939 Limited Partnership, and because this raised a potential conflict of interest, Janikula asked appellants to return a ballot to him indicating their approval or disapproval of the proposed sale. None of the ballots were returned.

On March 25, the same day the ballots were mailed to appellants, Janikula executed a contract for deed on behalf of 3939 Limited Partnership, and made an assignment of the Partnership's interest in that contract to Floyd and Arlene Sjostrand. In consideration of the assignment, the Sjostrands paid Janikula $70,000. The money was never distributed to appellants, however. Floyd Sjostrand recorded the contract for deed and the assignment on July 18, 1986.

The Sjostrands received monthly interest payments on the contract from Janikula by checks drawn on an account in the name of "Grand Chicago." The payments continued until April 1987, when several checks were returned for insufficient funds. The Sjostrands cancelled the contract for deed, and filed notice of the cancellation with the county recorder on November 9, 1987.

Appellants were subsequently notified of default on the Erickson contract for deed. When appellants could not contact Janikula,[1] they filed a quiet title action against him and all others claiming an interest in the apartment property. Appellants subsequently moved the court for a determination that the Sjostrands had no interest in the property. Only attorneys for appellants and the Sjostrands appeared to argue that motion. No appearance was made on behalf of any other party claiming an interest in the property.

On February 10, 1989, the trial court issued an order stating 1) Janikula had authority to convey the assignment of the contract for deed to the Sjostrands, and 2) the assignment created an equitable lien for $70,000 plus interest in favor of the Sjostrands on the Partnership's interest in the property. The court amended its order in March 1989 to dismiss that portion of appellants' complaint not seeking a judgment quieting title to the property. Judgment was entered March 22, 1989.

## ISSUES

1. Did the general partner have authority to convey the Partnership property without the consent of the limited partners?

2. Did the assignment of the Partnership's interest in the contract for deed create an equitable lien in favor of the assignees?

## ANALYSIS

■ A partnership is a contractual relationship, *Wallner v. Schmitz*, 239 Minn. 93, 95, 57 N.W.2d 821, 823 (1953). The interpretation of a contract is a matter of law. *See West Bend Mutual Insurance Co. v. Armstrong*, 419 N.W.2d 848, 850 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. May 16, 1988) ("The interpretation of an insurance contract is a matter of law"). The trial court's determination of legal questions is not binding on this court. *Id.* citing *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn.1977).

**1.** Janikula filed for bankruptcy on April 27, 1988, and on October 13, 1988 the bankruptcy trustee abandoned any interest of the estate in the property or the Partnership.

### 1. *Authority of the General Partner*

Appellants contend that according to the Partnership agreement the general partner had no authority to sell the Partnership property without the unanimous consent of the limited partners. The controlling document, the Partnership agreement, reads:

POWERS AND RIGHTS OF GENERAL PARTNER

10.1 All partners named herein as General Partner shall have unlimited liability. All partners who are General Partner shall have equal rights in the management of the Partnership business, and shall devote such time as necessary to the Partnership, but shall not be required to devote their full time and attention to the business of the Partnership. In the event there shall be more than one General Partner, no General Partner shall, without the consent of the other General Partners, endorse any note, or act as an accommodation party or otherwise become security for any person. Without the consent of the General Partners, none of the General Partners shall on behalf of the Partnership:

(a) Borrow or lend money;

(b) Make, deliver or accept any commercial paper;

(c) Execute any mortgage, security agreement, bond or lease; or

(d) Purchase or contract to purchase, or sell or contract to sell, any property for or of the Partnership other than the type of property bought and sold in the regular course of business.

\*　　\*　　\*　　\*　　\*　　\*

10.3 Notwithstanding the above, no action with respect to the Partnership Property (except such actions as necessary in the conduct of the Partnership in its regular course of business) shall be taken by any General Partner without the unanimous consent of all General Partners.

\*　　\*　　\*　　\*　　\*　　\*

10.6 Notwithstanding any other provision contained herein or elsewhere, the General Partner may with the unanimous consent of all Partners named herein as General Partner contract for the sale of and sell all or substantially all of the Partnership Property. Upon the consummation of such sale and within thirty (30) days thereof the General Partner shall notify all Partners and Assignees in writing of such sale and of the terms upon which the proceeds of such sale shall be distributed and the Partnership terminated, such distribution and termination being subject to the terms of this Agreement.

Appellants allege that the first sentence of section 10.6 limits the general partner's authority to sell the Partnership property by requiring unanimous consent of all the partners, both limited and general. We agree, however, with respondent's assertion that section 10.6 requires only the consent of the other general partners, if any, although section 10.6 requires that all partners and assignees be *notified* of any sale within 30 days of the consummation of the sale.

Our interpretation of section 10.6 is consistent with section 10.1, addressed to "all partners named herein as General Partner," which states that in the event there is more than one general partner, none of the general partners may sell any Partnership property without the consent of the other general partners. It is also consistent with the language of section 10.3 which states that no action with respect to Partnership property shall be taken by any general partner without the unanimous consent of all general partners.

In addition, our interpretation of section 10.6 is consistent with Minn.Stat. § 322.09 (1988) which recognizes that

A general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners.

Specifically, a general partner in a limited partnership cannot "[p]ossess partnership property, or assign their rights in specific partnership property, for other than a partnership purpose." Minn.Stat. § 322.09(4) (1988). Thus both our interpretation of paragraph 10.6 and the relevant statute

deny Janikula's authority to assign an interest in specific Partnership property if he does so "for other than a partnership purpose." Here, however, the purpose of this Partnership was to "acquire, own, operate * * * and ultimately sell the Partnership Property."

If this court accepted appellants' interpretation of the Partnership agreement, we would obligate the general partner to notify the other partners 30 days after the sale of Partnership property even after those partners had already unanimously voted to sell the property. Such obligation would result in such meaningless duplication of effort as to be unreasonable.

## 2. *Validity of the Equitable Lien*

Appellants also argue that even if Janikula's conveyance of the contract for deed and assignment of the Partnership's interest in that contract were valid, the Sjostrands purchased only the right to receive payments on the contract for deed, and when those payments ceased and the Sjostrands cancelled the contract, they were not then entitled to an equitable lien on the property.

▮▮▮ A vendor may assign a contract for deed as security for the payment of a loan, and the assignment vests in the assignee a lien on the vendor's interest in the property to the extent of the debt secured, not exceeding the purchase money unpaid on the contract. *See Lamm v. Armstrong*, 95 Minn. 434, 104 N.W. 304 (1905). In addition, an equitable lien arises where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched. *Borsgard v. Elverum*, 248 Minn. 405, 414, 80 N.W.2d 604, 610 (1957) (quoting Restatement of Restitution § 161 (1937)).

While both the parties and the trial court refer to Janikula's transaction with the Sjostrands as an assignment of the "vendor's interest" in the partnership property, we find merely an assignment of the *partnership's interest* in the property, which, as the Sjostrands concede, was not a fee title interest.

▮▮▮ A deed is the instrument used to convey title to land in fee simple, and by definition, the vendee on a contract for deed does not hold legal title until certain contract conditions have been met, such as completion of payments by the purchaser of the property. *See Black's Law Dictionary*, 294 (5th ed. 1979). An assignment cannot give rise to an equitable mortgage in the assignee where the vendor-assignor does not have an interest in the property. *Kurz v. Gramhill*, 269 N.W.2d 68, 71 (Minn.1978).

▮▮▮ The record in this matter reveals no indication that a security interest in the property was created by the transaction between the Sjostrands and Janikula. Although the trial court characterized the interest acquired by the Sjostrands as a "bargained-for security interest," there is no evidence that the Sjostrands ever contemplated receiving anything other than monthly payments from the vendee on the contract in exchange for their payment of $70,000. In addition, there is nothing in the record to indicate that the Sjostrands assumed any obligation to pay off the upstream contracts for deed despite notice in the contract of three encumbrances on the property. An equitable lien is inappropriate where no security interest exists. *See First National Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 503–04 (Minn.1981) (an equitable mortgage is created when the parties intend a security transaction; when record discloses no indication a secured obligation was intended, an equitable lien is "wholly inappropriate").

▮▮▮ Both appellants and the Sjostrands were the unfortunate victims of Janikula's deceit. The Sjostrands paid substantial consideration for the assignment and took care to record the contract for deed and the assignment. They took proper steps to cancel the contract for deed when the vendee's payments ceased. Appellants, for their part, never received their share of the $70,000 paid to Janikula for the assignment to the Sjostrands. With the heavy debt load on the apartment building, appellants will be unlikely to recover any or all of

their investment in the Partnership property. While the trial court commendably attempted to give relief to the more deserving of these two innocent parties, we cannot find in the record before us authority to impose an equitable lien in favor of the Sjostrands on the property itself.

## DECISION

The trial court did not err in holding the general partner had authority to convey an assignment of the contract for deed to the Sjostrands. However, an equitable lien may not be imposed on the Partnership property when neither a fee title nor security interest was conveyed to the Sjostrands.

Affirmed in part and reversed in part.