Ronald L. TRONDSON, et al., individually and as Limited Partners of Grand Chicago Limited Partnership, Respondents,

v.

Duane JANIKULA, Ronald L. Knuth, 3939 Limited Partnership, Respondents,

Floyd C. Sjostrand, et al., Petitioners, Appellants,

Clara A. Axberg, et al., Joseph C. Lindseth, et al., Donald J. Erickson, et al., Grand Chicago Partnership, and Coin–Controlled Washers, Inc., Respondents.

No. C1–89–780.

Supreme Court of Minnesota.

July 27, 1990.

Thomas P. Stoltman, Sharon L. Brenna, Larkin, Hoffman, Daly & Lindgren, P.A., Bloomington, for appellant.

John E. Brandt, John R. Shoemaker, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, for Trondson, et al.

Duane Janikula, Fifty Lakes, pro se.

Ronald L. Knuth, Shorewood, pro se.

Coin–Controlled Washers, Inc., Minneapolis, pro se.

Suzanne Sandahl, Minneapolis, for Clara Axberg, et al.

Dennis L. Peterson, Minneapolis, for Joseph Lindseth, et al.

Patrick McGuigan, St. Paul, for Donald Erickson, et al.

KEITH, Justice.

This case is before us to determine the property interests of appellants Floyd C. Sjostrand and Arlene J. Sjostrand (the Sjostrands) as opposed to respondents, the limited partners of Grand Chicago Limited Partnership (Chicago Partnership), in an apartment building known as 3939 Chicago Avenue South, Minneapolis, Minnesota. The district court found in favor of the Sjostrands, declaring that Duane Janikula (Janikula), the general partner of Chicago Partnership, had authority to convey the property, and his assignment of the Chicago Partnership's interest in the contract for deed created an equitable lien in the amount of $70,000, plus interest at 10 percent, in favor of the Sjostrands. The court of appeals affirmed the order that Janikula had authority to convey the property, but reversed the imposition of an equitable lien on the grounds that neither a fee title nor security interest was conveyed by the assignment to the Sjostrands. *Trondson v. Janikula*, 446 N.W.2d 414, 419 (Minn.App. 1989). We affirm in part and reverse in part.

Chicago Partnership, consisting of a general partner and seven limited partners, was formed October 8, 1982 to acquire, operate, and ultimately sell this rental property. Chicago Partnership was governed by a Limited Partnership Agreement (Agreement) prepared by Janikula and signed by all partners. The Agreement delineated the powers and rights of the general partner.

On September 28, 1982, Daniel M. Erickson, Dawn M. Erickson, and Donald J. Erickson, as vendors, and Grand Chicago Partnership,[1] as vendee, entered into a contract for deed with respect to the property at 3939 Chicago Avenue. On October 8, 1982, Grand Chicago Partnership executed a quit claim deed, later recorded on July 24, 1984, conveying its interest in this property to Chicago Partnership. The property at that time was subject to the following additional encumbrances:

(a) a contract for deed dated July 1, 1975, between Clara A. Axberg, Earl C. Axberg and Renee Z. Axberg, vendors, and

---

1. Grand Chicago Partnership is to be distinguished from Chicago Partnership. The former was not a limited partnership and as far as is discernible from the record consisted only of Janikula. The latter is the limited partnership that is a party to this action.

Joseph C. Lindseth, vendee, which was recorded on August 12, 1977;

(b) a contract for deed dated July 28, 1977, between Joseph C. Lindseth and Sandra Lindseth, vendors, and Donald J. Erickson and Daniel M. Erickson, vendees, which was recorded on October 20, 1982.

On March 25, 1986, Janikula sent a letter to the limited partners informing them that he had entered into a purchase agreement with another partnership to sell the property. The letter pointed out a possible conflict of interest because Janikula was a general partner of both the selling and purchasing partnerships. It requested the partners' approval and provided a ballot to be checked either approving or disapproving the sale. None of the limited partners returned the ballot.

On the same day the letter was sent, Janikula executed in the name of both parties a contract for deed from Chicago Partnership, vendor, to 3939 Limited Partnership (3939), vendee. Also on the same date, he assigned Chicago Partnership's vendor interest in the new Chicago Partnership–3939 contract for deed to the Sjostrands for consideration of $70,000 (which Janikula apparently converted). Both the Chicago Partnership–3939 contract for deed and its assignment to the Sjostrands were recorded on July 18, 1986.

The Sjostrands received payments on the contract for deed for a year, until four checks made out in April 1987 were returned for insufficient funds. The Sjostrands pursuant to statute then cancelled the contract for deed effective November 9, 1987.

The limited partners learned of the sale of the property and the assignment of their interest in the contract for deed sometime in the autumn of 1987. They promptly filed suit on October 10, 1987 to restrain Janikula from taking further action, to compel him to render an accounting, to dissolve the partnership, and to quiet title to the property.

After filing the complaint in this action, the limited partners paid off the Lindseth–Erickson contract for deed and received and filed a quit claim deed. On April 27, 1988, Janikula filed a Chapter 7 Petition in Bankruptcy, and on October 11, 1988, the bankruptcy trustee provided the court with a report of abandonment of this property.

The two issues before us are: Did Janikula, as general partner of Chicago Partnership, have the authority to sell this property without the consent of the limited partners and if so, what interest do the Sjostrands now have in this property?

■■■ 1. The written agreement governing Chicago Partnership delineates the general rights and powers of the general partner. Paragraph 10.6 of the agreement reads as follows:

Notwithstanding any other provision contained herein or elsewhere, the General Partner may with the unanimous consent of all Partners named herein as General Partner contract for the sale of and sell all or substantially all of the Partnership Property. Upon the consummation of such sale and within thirty (30) days thereof the General Partner shall notify all Partners and Assignees in writing of such sale and of the terms upon which the proceeds of such sale shall be distributed and the Partnership terminated, such distribution and termination being subject to the terms of this Agreement.

■■ The trial court considered the Agreement's meaning clear on its face and read it to require only the consent of the general partner, not the limited partners. *Trondson v. Janikula*, D.C. File No. 87–19340, Memo. at 2 (4th Judicial Dist., Feb. 10, 1989). Construction and effect of a contract presents a question of law, unless an ambiguity exists. *Hydra–Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 916–17 (Minn.1990). Ambiguity exists when the language of a written document, by itself, is reasonably susceptible to more than one meaning. *Metro Office Parks Co. v. Control Data Corp.*, 295 Minn. 348, 351, 205 N.W.2d 121, 123 (1973).

As we read the Agreement, the language purporting to give the general partner authority to sell the partnership's real estate is ambiguous. It can be read to mean (1)

the general partner may, with the consent of all partners, as general partner sell all of the partnership property, or (2) the general partner may, with the consent of all partners who are named in the Agreement as general partner, sell all of the partnership property.

■ None of the evidence in the record, consisting entirely of documents and affidavits, addresses interpretation of the Agreement. The only writing outside the Agreement which might illuminate its meaning is the letter from Janikula pointing out his conflict of interest and requesting the limited partners' approval of the sale. Regardless of whether we read only the contract language or also consider the effect of Janikula's letter, resolution of the ambiguity here is in the nature of a finding of fact. Minn.R.Civ.P. 52.01 provides: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous * * *." Minn.R.Civ.P. 52.01 (amended effective January 1, 1989 to follow the identical 1985 amendment made to its counterpart, Fed.R. Civ.P. 52(a)). When deciding whether a finding of fact is clearly erroneous, this court takes the view of the evidence which is most favorable to the trial court's findings. *Caroga Realty Co. v. Tapper*, 274 Minn. 164, 169, 143 N.W.2d 215, 220 (1966). Where two possible meanings exist, both of which are reasonable interpretations based on the evidence, the fact that we might read the language differently than the trial court, without more, is not sufficient to find the trial court's interpretation to be clearly erroneous. Therefore, we affirm the trial court's finding that Janikula had the authority to convey the real estate to 3939 Limited Partnership and to assign Chicago Partnership's vendor's interest to the Sjostrands.

■ 2. The question then becomes: what interest do the Sjostrands have in this property? The Sjostrands maintain the assignment of the vendor's interest in this contract for deed vested in them an equitable lien or mortgage in the sum of $70,000, plus interest. Where the vendor of a contract for deed assigns the contract as security for the payment of his or her debt to the assignee, the assignment will vest in the assignee an equitable mortgage on the vendor's interest in the property. *Lamm v. Armstrong*, 95 Minn. 434, 437, 104 N.W. 304, 305 (1905). The equitable lien or mortgage may be created when all the circumstances indicate that the real nature of the transaction is that of a loan advanced on security of realty. *Gagne v. Hoban*, 280 Minn. 475, 479, 159 N.W.2d 896, 899–900 (1968) (in spite of the absence in instruments of an express loan, transaction found to be a mortgage based on all circumstances); *cf. First Nat'l Bank v. Ramier*, 311 N.W.2d 502, 503–04 (Minn. 1981) (rule recognized); *Kurz v. Gramhill*, 269 N.W.2d 68, 71 (Minn.1978) (rule recognized, used the terms equitable lien and equitable mortgage interchangeably).

In this case, the Sjostrands were assigned the vendor's interest in the Chicago Partnership–3939 contract for deed. Undisputed evidence indicates that the Sjostrands purchased this interest at a discount as an investment. (Sjostrand's Affidavit, ¶ 2). No evidence, circumstantial or documentary, indicates the existence of any debt between the Sjostrands and Janikula or the Sjostrands and Chicago Partnership or that the assignment was made as security for payment of a debt. This evidence negates the finding of an equitable mortgage.

■ The limited partners argue that the assignment was in actuality a transfer to the Sjostrands of only their right to receive the installment payments from 3939. A few state courts have begun to take the position that the vendor's interest is simply a personal property interest—the right to receive the installment payments.[2] This is a minority position and not the law in Minnesota.

The assignment of a vendor's interest in a contract for deed when no security interest is involved gives the assignee the same

**2.** *See* 7 R. Powell & P. Rohen, *Powell on Real Property* ¶ 938.20[1] at 84D–4–5 (1989). *See* also, *e.g.*, *Marks v. City of Tucumcari*, 93 N.M. 4, 5, 595 P.2d 1199, 1200 (1979).

rights the vendor possessed in the property. *Pelser v. Gingold,* 214 Minn. 281, 287, 8 N.W.2d 36, 40 (1943). The vendor's rights under a contract for deed include the "right to the purchase money, [and] an equitable lien on the land therefore * * *." [3] *Id.* at 287–88, 8 N.W.2d at 40. The Sjostrands, as assignees, thereby received the right to the purchase money to be paid by 3939 and a lien on the land therefor. Pursuant to both the contract for deed and Minn.Stat. § 559.21 (1988), the Sjostrands had the right to cancel the contract upon default, which they did pursuant to the statute. Under the default provision of the contract for deed, the Sjostrands are entitled to monies received on the contract.[4] We hold, therefore, that the assignment of the vendor's interest in Chicago Partnership to the Sjostrands vested in them whatever rights Chicago Partnership had in the property as vendors, including recourse against the property for the purchase price, subject to the underlying encumbrances.

Affirmed in part, reversed in part.

3. An equitable lien arising from the vendor's contract for deed right to the purchase price is not the same as an equitable mortgage (sometimes called equitable lien) dependent on debt owed.

4. The relevant portions of the default provision of the contract for deed contain this provision: All right, title and interest acquired under this contract by Purchaser shall then cease and terminate * * * and all payments made by Purchaser pursuant to this contract shall belong to Seller as liquidated damages for breach of contract.