**MAURICE SUNDERLAND ARCHITECTURE, INC.; Maurice Sunderland, Individually, Appellants/Cross–Appellees,**

v.

**Melvin SIMON, individually and respectively Chairman of the Boards, and President, and as controlling parties of the other corporate and partnership Defendants; Herbert Simon, individually and respectively Chairman of the Boards, and President, and as controlling parties of the other corporate and partnership Defendants; Triple Five Corporation, Ltd.; Triple Five Minnesota, also known as Triple Five Corporation, Inc.; Mall of America, Inc.; Mall of America Company; Melvin Simon & Associates, Inc.; Si–Minn, Inc.; Si–Minn Developers, Limited Partnership; Mall of America Associates, Appellees/Cross–Appellants.**

Nos. 92–3455, 92–3655.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1993.

Decided Sept. 22, 1993.

Sidney Feldshuh, Hackensack, NJ, for appellants.

Gary Van Cleve, Bloomington, MN, for appellees.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and HANSEN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Maurice Sunderland and the architectural firm that bears his name (collectively referred to as "Sunderland") appeal the district court's entry of summary judgment and dismissal of his claims of breach of contract and the covenant of good faith and fair dealing. The appellees (collectively referred to as "the mall interests") cross-appeal the district court's refusal to award sanctions pursuant to Fed.R.Civ.P. 11. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

The parties' relationship is both lengthy and acrimonious; we recount only those facts necessary to dispose of this appeal. Each of the mall interests had some part in the development and construction of the Mall of America ("the Mall"), which is a 4.2 million square foot shopping complex in Bloomington, Minnesota. Sunderland performed certain architectural services in connection with the Mall's construction.[1] In August 1990, Sunderland sued a variety of entities on a variety of theories, essentially complaining

about the lack of attribution he received for providing architectural services. All of the mall interests, except Melvin and Herbert Simon, were defendants in the first suit.[2] The parties settled the case two months after it was filed. Paragraph seven of the settlement agreement required the mall interests to "recognize" Sunderland as "original designer of Mall of America." The paragraph goes on to say that "[r]ecognition will include ..." and lists, in six subparagraphs, six specific acts of recognition that must take place. Only subparagraphs (b) and (f) are relevant to this appeal; they require the following acts of recognition:

(b) Inclusion in any publication of Mall of America wherein designer or architect is mentioned.

\*     \*     \*     \*     \*     \*

(f) A letter of commendation and acknowledgment.

In July 1992, following a lengthy exchange of communications, Sunderland sued the mall interests for breach of the settlement agreement. The initial complaint alleged the mall interests violated paragraph 7(b) by failing to mention Sunderland in *Simon Developments*, a magazine published and copyrighted by Melvin Simon & Associates. The amended complaint added an allegation that paragraph 7(f) was violated because the letter the mall interests sent commended Sunderland for being the "competition design architect" instead of the "original design architect." The amended complaint also alleged paragraph seven was breached when the mall interests rescinded Sunderland's invitation to the Mall's grand opening and that the mall interests had breached the implied covenant of good faith and fair dealing.

In granting the mall interests summary judgement,[3] the district court ruled that, as a

---

1. The precise nature of Sunderland's services is not clear and, to some extent, is the gravamen of the underlying suit.

2. Solely for the ease of discussion, the original defendants will also be referred to as "the mall interests." We recognize there are some open questions as to Melvin and Herbert Simon's obligations under the settlement agreement, but the district court did not rule on these issues so we do not reach them.

3. The district court's ruling came in two parts, with the first part prompted by the court's granting of the mall interests' motion to expedite consideration of the case. Sunderland appeals the court's decision to grant the motion to expedite. Given our disposition of this case, it is not necessary for us to decide whether the court acted properly in granting this motion.

matter of law, the settlement agreement was an integrated agreement and the terms were not ambiguous. It then concluded (1) Paragraph 7(b) had not been violated because the publication in question was not a "publication of Mall of America," but rather a publication of Melvin Simon & Associates; (2) Paragraph 7(f) had not been violated because the agreement did not specify the terms of the letter of commendation, so the mall interests merely had to provide a letter that fit the "broad contours set forth in Paragraph 7(f)"; (3) the six enumerated obligations under Paragraph 7 represented the mall interests' only obligations, so the agreement had not been breached by the cancellation of Sunderland's invitation to the Mall's grand opening; and (4) Minnesota law does not provide a cause of action for breach of a covenant of good faith and fair dealing unless one party makes another party's performance under the contract impossible, and no such facts were presented in this case.

## II. DISCUSSION

### A. Breach of Contract

#### 1. The Standard of Review and the Legal Landscape

■ A de novo standard of review is dictated not only by the procedural posture of this case,[4] but also by the relevant substantive issues involved. The determination that a contract is or is not ambiguous is a legal determination, and no deference is paid to the trial court's decision on this issue. *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn.1982). If the contract is unambiguous, the interpretation is a question of law and is reviewed de novo. *Lakeland Tool & Eng'g, Inc. v. Thermo–Serv, Inc.*, 916 F.2d 476, 481 (8th Cir.1990) (applying Minnesota law). However, if a contract is ambiguous, the meaning of the contract becomes a question of fact, *City of Virginia v. Northland Office Properties Ltd. Partnership*, 465 N.W.2d 424, 427 (Minn.Ct.App.1991), and the granting of a summary judgment would be inappropriate. *See In re Turners Crossland Dev. Co.*, 277 N.W.2d 364, 368 (Minn.1979). In interpreting the meaning of an unambiguous contract, the court cannot consider anything other than the contract. *Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 298 Minn. 428, 215 N.W.2d 473, 476 (Minn.1974). However, if a contract term is ambiguous, extrinsic evidence can be considered by the trier of fact to help it determine the parties' intent. *Material Movers, Inc. v. Hill*, 316 N.W.2d 13, 17 (Minn.1982).[5]

■ A contract term is ambiguous if "the language used is reasonably susceptible of more than one meaning...." *Blattner*, 322 N.W.2d at 321. This determination is to be based solely on the language of the contract. *ICC Leasing Corp. v. Midwestern Mach. Co.*, 257 N.W.2d 551, 554 (Minn.1977). It would not be enough for the mall interests to insist, as they have done in this case, that they would not have agreed to the settlement if it has the meanings Sunderland suggests. If Sunderland's contrary interpretations are reasonable and not absurd, then the agreement's meaning becomes a question of fact and the mall interests' arguments would be relevant to the factfinder's determination of the agreement's meaning. With these principles of law in mind, we now examine the relevant clauses of the settlement agreement.

#### 2. Paragraph 7(b)

■ Paragraph 7(b) required the mall interests to recognize Sunderland as the original designer of the mall "in any publication of Mall of America wherein designer or architect is mentioned." The mall interests argue, and the district court held, that this language unambiguously refers to materials published by the Mall of America. We agree that this is *a* reasonable interpretation, but

---

4. In reviewing the district court's grant of a motion for summary judgment, we use the same standard as the district court and affirm if the facts, when viewed in the light most favorable to the nonmoving party, demonstrate that the moving party is entitled to judgment as a matter of law. *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990).

5. This is true even if, as the mall interests insist is the case here, the contract in question is deemed to be fully integrated. *E.g., Apple Valley Red–E–Mix, Inc. v. Mills–Winfield Eng'g Sales, Inc.*, 436 N.W.2d 121, 123 (Minn.Ct.App.1989).

hold that is not the *only* reasonable interpretation. A publication "of Mall of America" can certainly mean a publication "by" or "from" the Mall, but it can also refer to publications "about" or "regarding" the Mall that are compiled by or for the parties that are signatories to the settlement agreement.

The mall interests argue that the phrase cannot be referring to publications about the mall because Melvin Simon & Associates, the publisher of *Simon Developments*, is not identified in paragraph 7(b). The problem is that the agreement defines "Mall of America" as shorthand reference for "a large retail and entertainment complex located in Bloomington, Minnesota, and commonly known as the Mall of America." "Mall of America" does not refer to any of the parties to the agreement. Thus, paragraph 7(b) does not refer to any of the mall interests, yet obviously the parties intended that some or all of the mall interests bear the obligations imposed therein. The mall interests insists Melvin Simon & Associates is not bound by the obligations in 7(b), which leaves an ambiguity: which mall interest is bound given that none were specifically mentioned?

The mall interests also argue that when the parties wanted to impose obligations on Melvin Simon & Associates, the parties did so specifically, as they did in subparagraph 7(e).[6] Because Melvin Simon & Associates are not mentioned in subparagraph 7(b), the obligation contained therein cannot be imposed upon it. An equally reasonable interpretation would have the responsibility in subparagraph 7(e) be borne solely by Melvin Simon & Associates and the responsibilities in the *other* subparagraphs—wherein no specific mall interests are identified—are to be borne by all the mall interests, individually and collectively.

Finally, the mall interests argue that "Mall of America," as it appears in subparagraph 7(b), refers only to those mall interests with the words "Mall of America" in their name. This interpretation ignores the fact that when the parties to the agreement wanted to impose obligations on less than all the mall interests, they specified which mall interests were to be obligated. The argument also ignores the fact that, as stated earlier, "Mall of America" refers to the "retail and entertainment complex" and not to any of the parties.

In conclusion, we make clear that what we have said here should not be viewed as endorsing any particular interpretation of paragraph 7(b). Instead, the points made are intended to demonstrate that the provision is ambiguous and can reasonably support interpretations other than the one adopted by the district court. Consequently, the meaning of the contract is a question of fact, and summary judgment was inappropriate.

### 3. Paragraph 7(f)

■ The mall interests argue that because paragraph 7(f) only requires that Sunderland be provided "a letter of commendation and acknowledgment," they satisfied this obligation when they sent him a letter acknowledging and commending him for his "role as Competition Design Architect in development" of the mall. Sunderland does not dispute that the letter sent by the mall interests acknowledges and commends him; instead, he argues that it fails to acknowledge and commend him for his true role in the mall's development. The mall interests argue that Sunderland's argument must fail because the settlement does not specify any particular language. However, it is the mall interests' argument that is flawed.

■ We think it absurd that the obligation imposed by paragraph 7(f) could be satisfied by a letter that says no more than "we acknowledge and commend Sunderland"— yet this is the implication of the mall interests' argument. We think it obvious that Sunderland was to be acknowledged and commended for his role in the development of the mall. Unfortunately, the agreement does not clearly state what Sunderland's role was. Though the body of paragraph seven says Sunderland is to be recognized "as origi-

---

**6.** Subparagraph 7(e) requires "[i]nclusion in any publication in architectural trade magazines wherein designer or architect is mentioned wherein Simon is the source or is interviewed to the extent that such inclusion is in the control of Simon." Simon is shorthand reference for Melvin Simon & Associates.

nal designer," it is not clear whether this phrase is synonymous with the phrase "Competition Design Architect." The role for which Sunderland is to be acknowledged and commended is not clear, so whether the letter sent by the mall interests satisfied their obligation cannot be determined as a matter of law. These issues must be resolved by a finder of fact.

### 4. The Invitation to the Mall

 Clearly, none of the six specified acts of recognition in paragraph seven required the mall interests to invite Sunderland to the mall's grand opening. This point can be dispositive only if the mall interests' obligations are limited to those specified in the agreement.

The sentence immediately preceding the subparagraphs states that "[r]ecognition will include for the seven years immediately following the date of this agreement," then sets forth six specific acts. In arguing that their obligations extend only to the six specific acts, the mall interests are effectively interpreting the phrase "recognition will include" to mean "recognition will include only." Though this is certainly a reasonable interpretation, the text equally lends itself to a contrary one; namely, "recognition will include, but not be limited to." The agreement does not provide any way to tell which interpretation was intended, so a fact question exists. A factfinder must decide whether the mall interests have obligations beyond those specified in the agreement and, if so, whether "disinviting" Sunderland breached the agreement.[7]

### B. Covenant of Good Faith and Fair Dealing

 Sunderland claims that the mall interests' repeated and consistent violations of the agreement violated an implied covenant of good faith and fair dealing. Although Minnesota law imposes the covenant to non-sales contracts, it only "requires that one

party not make it impossible for the other party to perform the contract." *American Warehousing & Distrib., Inc. v. Michael EDE Management, Inc.,* 414 N.W.2d 554, 557 (Minn.Ct.App.1987). Assuming, as we must, the truth of Sunderland's factual assertions, the mall interests did nothing to impair Sunderland's ability to perform his obligations under the agreement. Consequently, the district court properly entered summary judgment against Sunderland on this claim.

### III. CONCLUSION

For the foregoing reasons, we vacate the entry of summary judgment on the breach of contract claims and remand for further proceedings, and affirm the district court in all other respects.[8]

---

7. We point out that, as is usually the case, the ambiguities we have identified exist as a result of the words and phrases chosen and agreed to by all the parties, and hence could have been alleviated at the time the agreement was drafted.

8. Our reversal on the contract claims demonstrates that Sunderland's suit has some arguable merit; consequently, we rule that the district court did not abuse its discretion in denying the mall interests' motion for sanctions.