Ruben GUTIERREZ, Relator,

v.

**RED RIVER DISTRIBUTING, INC. and Federated Mutual Insurance Co.,**
Respondents.

No. C7–93–2456.

Supreme Court of Minnesota.

March 25, 1994.

Winters Law Office, John A. Winters, Crookston.

Fitch, Johnson, Larson & Walsh, Philip B. Moosbrugger, Minneapolis.

### ORDER

Based upon all the files, records and proceedings herein,

IT IS HEREBY ORDERED that the decision of the Workers' Compensation Court of Appeals, filed November 18, 1993, be, and the same is, affirmed in accordance with the memorandum attached hereto.

BY THE COURT:
/s/ Alexander M. Keith
Chief Justice

### MEMORANDUM

Ruben Gutierrez sustained a compensable low back injury in August 1986. His employer, Red River Distributing, together with its workers' compensation carrier, Federated Mutual Insurance, admitted liability and paid various benefits. In May 1990, employer/insurer initiated proceedings to discontinue benefits. At the discontinuance hearing, the parties reached an agreement which, as summarized on the record by counsel for employer/insurer, provided that employee was to receive temporary total benefits through August 30, 1990, at which point the benefits would cease unless employee had surgery by that date. Counsel for employer also said "we do not have an objection to the surgery being performed if the doctors at the Mayo Clinic deem that appropriate." Counsel for the employee added that it had been agreed that "surgery will be paid for by the insurance agency;" counsel for the employer/insurer did not contradict this statement. The

agreement was reduced to writing,[1] and an award was entered thereon on August 7, 1990.

Meanwhile, the Mayo Clinic advised employee that his request for an evaluation had been refused because of an administrative policy giving priority to local individuals; but another neurosurgeon, Dr. Hazen from MeritCare in Fargo, North Dakota, indicated he would do the surgery, conditioned on a second opinion from Dr. Nagle, an orthopedic surgeon; and when that apparently came through, surgery was scheduled for August 24, 1990. Employer/insurer informed employee they would not pay for surgery by Dr. Hazen or Dr. Nagle; and temporary total benefits ceased as of August 30, 1990. Surgery was ultimately carried out, pursuant to administrative order, on November 21, 1991; and payment of temporary total benefits resumed.

The compensation judge awarded temporary total benefits from August 30, 1990, through November 20, 1991, finding that employer/insurer's refusal to pay for the surgery amounted to "noncompliance" with the agreement, which included an implied promise to pay. The WCCA reversed, deciding the written agreement did not cover payment for surgery, that the document was clear and unambiguous, and that a finding of an implied agreement to pay by reference to the parties' on-the-record discussion as to their agreement violated the parol evidence rule. Having determined employer/insurer were under no obligation to pay for surgery by way of the settlement agreement, the WCCA reversed the award of wage loss benefits "on the grounds awarded by the compensation judge." *Gutierrez v. Red River Distributing, Inc.,* ___ Workers' Comp. Dec. ___, slip op. 5 (WCCA, filed November 18, 1993). The WCCA did not reach the merits of employee's claim for wage loss benefits on other grounds, remanding the matter for further proceedings.

"The parol evidence rule makes inadmissible evidence concerning discussions prior to or contemporaneous with the execution of a written instrument when that evidence contradicts or varies the terms of the written agreement. Evidence of subsequent oral agreements is not excluded by the rule. And, where a written agreement is ambiguous or incomplete, evidence of oral agreements tending to establish the intent of the parties is admissible." *Material Movers, Inc. v. Hill,* 316 N.W.2d 13, 17 (Minn.1982) (citations omitted). "A determination of whether the written document is a complete and accurate 'integration' of the terms of the contract is not made solely by an inspection of the writing itself, important as that is, for the writing must be read in light of the situation of the parties, the subject matter and purposes of the transaction, and like attendant circumstances." *Bussard v. College of St. Thomas, Inc.,* 294 Minn. 215, 224, 200 N.W.2d 155, 161 (1972).

■ Reading the written agreement in light of all the attendant circumstances in this case, including the situation of the parties, the subject matter and purpose to be served by the settlement, it appears to us the parol evidence rule did not bar proof of the oral agreement. Employer/insurer petitioned to stop payment of temporary total benefits, alleging employee had attained MMI and employee countered he had not attained MMI because he needed surgery. As employee argues, there would have been no agreement to end temporary total benefits by August 30, 1990, had there also been no agreement as to payment for surgery. At

---

1. The relevant part of the agreement provides:

It is the intention of the parties by and through this Stipulation to come to an agreement regarding maximum medical improvement and further payment of temporary total disability.

NOW, THEREFORE, the parties hereto stipulate that maximum medical improvement has been reached, and notice thereof has been duly served upon the employee as of May 15, 1990. The employer and insurer agree to pay temporary total disability through August 30, 1990.

The employee agrees that if he has not had his proposed surgery by that date, temporary total disability shall cease on August 30, 1990. The parties agree that should the employee undergo the proposed surgery at some point after August 30, 1990, the employee's right to claim temporary total disability from and after the date of any such surgery will be restored to him. Should such surgery take place, the parties will be free to litigate the question as to whether maximum medical improvement has occurred.

the same time, on-the-record discussions prior to the execution of the instrument reflect an agreement to pay conditioned on approval by a physician at the Mayo Clinic. There is nothing in the record to indicate an agreement on the part of the employer/insurer to assume any liability for expenses incurred as a result of referrals of physicians affiliated with a medical facility not named in the agreement and it appears employee's assumption to the contrary was simply mistaken. Although a mutual mistake as to a basic assumption on which an agreement has been made is required to make an agreement voidable, we have treated workers' compensation agreements differently, looking more to the primary objectives of the compensation system, *see, e.g., Napper v. Boise Cascade Corp.,* 348 N.W.2d 81 (Minn.1984). It appears to us that at the time the agreement was executed, the parties were mistaken as to the terms of the agreement and that the agreement is therefore voidable. Consequently, we affirm the reversal of the award of benefits, although for different reasons, and remand the matter to the compensation judge for further proceedings.