KELLOGG SQUARE PARTNERSHIP, a Minnesota Partnership, debtor-in-possession, Appellant,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellee.

No. 95–1284.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1995.

Decided Aug. 17, 1995.

James A. Rubenstein, Minneapolis, MN, argued (Michael J. Luzum, appeared on the brief), for appellant.

Delmar R. Erich, Minneapolis, MN, argued (Sarah Armstrong, appeared on the brief), for appellee.

Before BEAM and MURPHY, Circuit Judges, and VAN SICKLE,* District Judge.

BEAM, Circuit Judge.

In 1977, Kellogg Square Partnership (KSP) purchased a building from The Prudential Insurance Company of America (Prudential). When asbestos was discovered in the building years later, KSP filed suit against Prudential alleging breach of contract, fraudulent misrepresentation, and other claims. The district court[1] granted summary judgment in favor of Prudential and KSP appeals. Because Prudential did not warrant that the building was free of asbestos or otherwise undertake a duty to disclose the presence of asbestos, we affirm.

## I. BACKGROUND

In 1977, KSP purchased a 32–story apartment building from Prudential[2] in exchange for $5,200,000 in cash and a $10,000,000 mortgage. Prudential warranted in the purchase agreement that the building had been reasonably maintained and was in a "good state of repair and condition." Fifteen years later, KSP obtained an environmental survey of the building which indicated that certain textured ceilings, wallboard, floor tile, and pipe joints contained asbestos. The survey estimated that asbestos abatement would cost millions of dollars.

Shortly thereafter, KSP filed this action[3] to recover damages or rescind the purchase because Prudential had failed to disclose the presence of asbestos. In its complaint, KSP set forth the following grounds for relief: 1) breach of contract; 2) fraudulent misrepresentation; 3) negligent misrepresentation; 4) violation of the Uniform Deceptive Trade Practices Act; 5) indemnification; and 6) equitable subordination pursuant to 11 U.S.C. § 510.

The district court granted summary judgment in favor of Prudential on all six claims. The court rejected the contract claim after finding that the " 'repair and condition' provision of the purchase agreement does not cover the presence of asbestos in the building." The misrepresentation and deceptive trade practice claims met a similar fate based on the court's determination that Prudential did not have a duty to disclose the presence of asbestos. In light of these findings, the district court also rejected KSP's claims for indemnification and equitable subordination.

## II. DISCUSSION

On appeal, KSP argues that summary judgment on its claims was inappropriate because material issues of fact remain. We review the entry of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. *Burnette Techno–Metrics, Inc. v. TSI, Inc.*, 44 F.3d 641, 642 (8th Cir.1994). To the extent it bears on our summary judgment analysis, we review the district court's interpretation of Minnesota law de novo. *Id.*

### A. Breach of Contract

KSP claims breach of contract on the basis of Prudential's representation in the purchase agreement that the building and all its improvements and equipment "have been

---

* THE HONORABLE BRUCE M. VAN SICKLE, Senior District Judge for the District of North Dakota, sitting by designation.

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

2. The Kellogg Square Building was actually owned by a limited partnership consisting of Prudential and PIC Realty, a Prudential subsidiary.

3. Jurisdiction was proper in the district court based on diversity of citizenship and on KSP's status as a debtor in bankruptcy. 28 U.S.C. §§ 1332, 1334. KSP filed for Chapter 11 bankruptcy protection on September 28, 1992, three months before initiating this action against Prudential.

maintained in accordance with reasonable business practices and are in a good state of repair and condition, ordinary wear and tear excepted." By virtue of this representation, KSP contends, Prudential warranted that the building was free of asbestos. The district court disagreed, relying on another provision in the purchase agreement. That provision provided, as a condition to closing, that KSP would inspect the property and determine, "in its sole judgment," that the building and its systems were "in good working order and repair and in condition satisfactory to Buyer." Since KSP determined that the building was in good condition prior to closing, the district court concluded that Prudential's "good state of repair and condition" warranty did not cover the presence of asbestos.

KSP challenges the district court's interpretation of the contract. KSP contends it was entitled to rely on Prudential's warranty and limit its inspection accordingly. In KSP's view, summary judgment was improper on the contract claim because a jury must decide whether KSP's reliance on the warranty was reasonable and whether the scope of KSP's inspection (which did not uncover the asbestos) was reasonable under the circumstances.

■ We need not deal directly with this argument. Regardless of KSP's duty to in-

spect, the contract claim fails. It is doomed by the plain language of the purchase agreement. Determining whether a contract is ambiguous and interpreting an unambiguous contract are questions of law. *Maurice Sunderland Architecture, Inc. v. Simon*, 5 F.3d 334, 337 (8th Cir.1993) (applying Minnesota law). In this case, we find, as a matter of law, that the "good condition and repair" provision is not ambiguous and is not a warranty that the building was free of asbestos. In the context of the entire provision and the entire contract, "good state of repair and condition" cannot reasonably be read so broadly.[4] Prudential warranted only that the building and its equipment had been properly maintained.

■ KSP also claims that Prudential breached the disclosure provision of the purchase agreement. In this provision, Prudential warranted that its representations did not contain any false statements or knowingly omit any material facts. The warranty applies to representations contained in the purchase agreement and "in any other statement or documents delivered to [KSP] pursuant" to the purchase agreement.[5] KSP contends the provision was breached when certain Prudential officials told KSP's general partner that the building had "no problem" and "no defect." [6]

---

4. In its entirety, the provision at issue states:

 *Condition of Property.* The building and all parts thereof (including its structure, foundation and roof), improvements, electrical, heating, ventilating, air conditioning and plumbing (including sanitary and storm sewers) equipment and systems have been maintained in accordance with reasonable business practices and are in a good state of repair and condition, ordinary wear and tear excepted. Seller has no notice of any requirements or recommendations of or by any governmental body or agency requiring or recommending any repairs or work to be done on or with respect to the Property.

 Upon the execution of this Agreement, Buyer and its duly authorized agents shall have the right to fully inspect the Property and all parts thereof, including any and all records of Seller relating to the Property, improvements or mechanical systems, and the repair and maintenance thereof, whether such records were created prior or subsequent to Seller's ownership of the Property.

 Notwithstanding anything in this paragraph E to the contrary, the parties acknowledge that

the Property and all parts thereof were completed in approximately 1970 and the Property and all parts thereof have been in operation since that date, and except for normal repair and maintenance, the said systems and equipment are original equipment.
 *Appellant's Addendum at 13.*

5. The disclosure provision states:

 *Disclosure.* Seller represents that the representations of Seller herein and in any other statement or documents delivered to Buyer pursuant hereto are true, correct and complete to the best information and belief of Seller, and that such representations, statements or documents contain or will not contain any known false statement of a material fact or any representation, statement or document from which a material fact has been knowingly omitted.
 *Appellant's Addendum at 14.*

6. In his deposition, the general partner testified that the Prudential officials told him: "There was no problem. This is the best building, no defect, no nothing, best location, concrete, well managed, managed very well." Appellant's App.

This argument also fails by virtue of the plain language of the purchase agreement. The disclosure warranty covers only representations made in the purchase agreement and those delivered pursuant to the purchase agreement. KSP has offered no evidence that these oral remarks were delivered pursuant to the purchase agreement. From the record on appeal, it is not clear that the purchase agreement even existed when the statements were allegedly made. The district court properly granted summary judgment on KSP's breach of contract claim.

## B. Fraudulent Misrepresentation

■ KSP also claims that Prudential fraudulently misrepresented the condition of the building by failing to disclose that it contained asbestos. To establish a fraud claim based on nondisclosure, KSP must first show that Prudential was under some duty of disclosure. *See Simonsen v. BTH Properties,* 410 N.W.2d 458, 460 (Minn.Ct.App. 1987). Under Minnesota law, "one party to a contract generally has no obligation to disclose material facts to the other party." *Lakeland Tool and Eng'g, Inc. v. Thermo–Serv, Inc.,* 916 F.2d 476, 479 (8th Cir.1990) (applying Minnesota law). This general rule is subject to three exceptions:

(a) One who speaks must say enough to prevent his words from misleading the other party.

(b) One who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party.

(c) One who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts.

*Id.* The district court assumed that Prudential "knew of the presence and dangers of asbestos," but granted summary judgment upon its finding that none of the exceptions applied.

■ KSP argues that genuine issues of fact remain regarding the application of the first two exceptions. First, KSP contends that absent further disclosure, the "good state of repair and condition" provision in the purchase agreement, *see supra* note 4, and the "no defect" oral statement to KSP's general partner, *see supra* note 6, were misleading. We disagree. As discussed above, the provision in the purchase agreement warrants that the building was well-maintained, not that it was free of asbestos. The alleged oral remark, even when viewed in the light most favorable to KSP, was a generic statement, apparently made during price negotiations, which did not trigger a duty of further disclosure.

■ KSP also argues that disclosure was required because Prudential had special knowledge. Again we disagree. Information concerning the presence and dangers of asbestos was not "peculiarly within [Prudential's] knowledge." *Williams v. Dow Chemical Co.,* 415 N.W.2d 20, 28 (Minn.Ct.App. 1987). KSP had access to this information. KSP was given unimpeded preclosing access to the building, the building's employees, the building records, and the building plans and specifications.[7] Furthermore, as a sophisticated real estate investor, KSP had access to the same public information and government regulation which, according to KSP, put Prudential on notice that asbestos was a hazardous material. In short, KSP did not look for asbestos in the building because it did not avail itself of the public information it now claims was available at the time of the transaction. The district court properly granted summary judgment on KSP's claim for fraudulent misrepresentation.

at 94. He did not remember exactly who made the statements or when but noted, "The conversation was [that] the price of fifteen million-two was the proper price because this is a very good building." *Id.*

7. The asbestos of which KSP complains was not concealed. It was found in the floor tile, textured ceilings, and wallboard. In addition, the building plans and specifications called for the use of asbestos-containing materials. KSP argues that it was entitled to limit its inspection based on the "good state of repair and condition" warranty. As discussed in part A., the plain language of the purchase agreement does not support this argument.

## C. Remaining Claims

Our findings above require that we affirm the district court's grant of summary judgment as to each of KSP's remaining claims. The negligent misrepresentation claim, like the fraud claim discussed in part B., is based on nondisclosure of the asbestos. Because Prudential was under no duty to disclose, the claim fails. Indeed, recent Minnesota case law indicates that Prudential did not even owe KSP a duty of care in the first place. *See Safeco Ins. Co. v. Dain Bosworth Inc.,* 531 N.W.2d 867, 872 (Minn.Ct.App.1995) (finding no duty "for purposes of a negligent misrepresentation tort threshold" between parties to a commercial transaction negotiating at arms length). The absence of a duty to disclose also dooms KSP's Uniform Deceptive Trade Practices Act claim [8] and its claim for equitable subordination.[9] The indemnification claim fails because there was no breach of a representation in the purchase agreement.

## III. CONCLUSION

In sum, Prudential did not warrant that the Kellogg Square Building was free of asbestos nor did it undertake a duty to disclose the presence of asbestos. The order of the district court granting summary judgment in favor of Prudential on all of KSP's claims is affirmed.

8. We doubt that the Deceptive Trade Practices Act even applies to this real estate purchase transaction. Two of the three sections relied upon by KSP refer to misrepresentations relating to "goods or services." Minn.Stat. § 325D.44, subd. 1(5), (7).

9. A portion of the equitable subordination claim is based on Prudential's failure to disclose while it held a mortgage on the building. KSP's contention that Prudential undertook a postsale duty of disclosure is without merit.