**Joseph W. MICHALSKI, Jeanette Michalski, Robert G. Michalski, Paulette R. Michalski, Appellants,**

v.

**BANK OF AMERICA ARIZONA, an Arizona corporation, Appellee.**

No. 94–3508.

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1995.

Decided Oct. 5, 1995.

---

2. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

Michael D. Schwartz, Minneapolis, Minnesota, argued, for appellant.

Thomas Henry Boyd, St. Paul, Minnesota, argued Appearing on the brief (Gregory Scott Spencer, on the brief), for appellee.

* The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

Before WOLLMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BOGUE,* District Judge.

WOLLMAN, Circuit Judge.

Joseph W., Jeanette, Robert G., and Paulette R. Michalski (collectively, the "Michalskis") brought this diversity action against Bank of America Arizona ("Bank"), alleging various breach of contract claims under Minnesota law. Finding no dispute of material fact, the district court granted summary judgment in favor of Bank. We reverse and remand.

## I.

Bank is the successor corporation to Security Pacific Bank Arizona ("Security Pacific"). In 1990 and 1991, Security Pacific extended two loans to Reppel Steel, Inc. ("Reppel Steel"), totalling $1,750,000. The loans were secured by, among other things, Reppel Steel's accounts receivable. In March 1990, each of the Michalskis executed a Continuing Guaranty agreement, in which they guaranteed Reppel Steel's debt to Security Pacific.

Sometime after 1991, Reppel Steel apparently began experiencing difficulty in meeting its debt obligations to Bank. After various forbearance agreements between Bank, Reppel Steel, and the Michalskis had expired, Bank brought suit against Reppel Steel and the Michalskis in state and federal court to collect the balance due on the loans. In June 1993, Reppel Steel filed a Chapter 11 bankruptcy petition in the District of Arizona. Reppel Steel and Bank subsequently entered into a settlement agreement that enabled Bank to obtain relief from the automatic stay and provided for payment to Bank of proceeds that were to be obtained from an orderly liquidation of the collateral securing Reppel Steel's loans. Following the expiration of the settlement agreement, the balance due on Reppel Steel's loans remained in excess of $1,300,000.

In December 1993, Bank and the Michalskis entered into a "Settlement and For-

bearance Agreement" (the "Agreement"), the purpose of which was to resolve Bank's claims against the Michalskis under the guaranty agreements.[1] The Agreement provided, among other things, that the Michalskis would make scheduled payments on the amount due Bank; that they would deliver to Bank a stipulation for entry of judgment in the amount of $1,300,000; and that they would provide, as additional collateral, one or more letters of credit totalling $300,000 from a financial institution that was acceptable to Bank. Any additional amounts obtained from liquidation of Reppel Steel's assets were required to be credited to the scheduled payments due under the Agreement. Paragraph 15 of the Agreement further provided in relevant part:

> 15. *Financial Information.* Guarantors shall provide the following financial information to Bank:
>
> > 15.1 *Bi–Monthly Accounts Statements.* On the 15th and last day of each calendar month, statements of the status of collection of the accounts receivable.

Following execution of the Agreement, the Michalskis provided Bank with two letters of credit, both in the amount of $150,000. In January 1994, a dispute arose between the parties regarding the sufficiency of one of the letters of credit. Bank then sought and obtained a court order requiring the Michalskis to provide Bank with an acceptable letter of credit, as required under the Agreement. The Michalskis failed to comply with the court order and also failed to remit a scheduled payment that subsequently became due under the Agreement. After receiving notice of these issues, the Michalskis advised Bank of their understanding that the scheduled payments were to be made from the proceeds of collection of Reppel Steel's accounts receivable and that Bank was required under the Agreement to provide the Michalskis with information concerning the receivables so that they could assist in the collection effort. The Michalskis further advised that they were not obligated to make any scheduled payments until they had received the required information. Shortly thereafter, Bank filed the stipulation of judg-

ment with the district court, which then entered judgment against the Michalskis in the amount of $1,300,000. The parties continued their dispute over the terms of the Agreement, and in June 1994 Bank sought and obtained court approval to draw the $300,000 under the letters of credit originally submitted by the Michalskis.

In July 1994, the Michalskis brought this action against Bank, alleging various breach of contract claims. Specifically, the Michalskis alleged that Bank breached the Agreement by failing to provide them with information concerning Reppel Steel's accounts receivable. They alleged that as a result they were precluded from participating in collecting the accounts receivable. The Michalskis further asserted that Bank's refusal to provide the accounts receivable information prevented them from performing their obligations under the Agreement. Bank thereafter moved for summary judgment, alleging that the Agreement provided no support for the Michalskis' claims. The district court granted the motion. It held that the Agreement was a fully integrated document, free of ambiguity, and that Bank was not obligated to provide the Michalskis with information concerning Reppel Steel's accounts receivable. This appeal followed.

## II.

We review a grant of summary judgment *de novo*, applying the same standards employed by the district court. *Sperry v. Bauermeister, Inc.*, 4 F.3d 596, 597 (8th Cir.1993); Fed.R.Civ.P. 56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no dispute of material fact and that the moving party is entitled to judgment as a matter of law. *McIlheran v. Lincoln National Life Insurance Co.*, 31 F.3d 709, 710 (8th Cir.1994). Because this is a diversity case, the district court's interpretation of Minnesota law is also subject to *de novo* review. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

---

1. Only the terms of the Agreement are at issue in this appeal.

The Michalskis argue that the district court erred in holding that the Agreement was a complete and unambiguous contract. Specifically, they contend that paragraph 15 of the Agreement reflects an attempt by the parties to set forth their understanding that the Michalskis would be allowed to participate in the collection of Reppel Steel's accounts receivable and that they would provide Bank with status reports on the collection effort. The Michalskis maintain that because of their right to participate in the collection effort, Bank was, in turn, obligated to provide them with information concerning the accounts receivable. The Michalskis argue that although paragraph 15 attempts to set forth the rights and obligations of the parties, it is ambiguous and incomplete and that extrinsic evidence should be admitted to assist in interpreting the Agreement.

A settlement agreement is a contract and is to be construed in accordance with contract principles. *See State of Minnesota by the Crow Wing Environment Protection Assoc., Inc. v. City of Breezy Point,* 394 N.W.2d 592, 595 (Minn.Ct.App. 1986). Under Minnesota law, " '[t]he parol evidence rule makes inadmissible evidence concerning discussions prior to or contemporaneous with the execution of a written instrument when that evidence contradicts or varies the terms of the written agreement.' " *Gutierrez v. Red River Distributing, Inc.,* 523 N.W.2d 907, 908 (Minn.1994) (quoting *Material Movers, Inc. v. Hill,* 316 N.W.2d 13, 17 (Minn.1982). If, however, "a written agreement is ambiguous or incomplete, evidence of oral agreements tending to establish the intent of the parties is admissible." *Id.* The initial question whether a contract is ambiguous is an issue of law. *Kellogg Square Partnership v. The Prudential Ins. Co. of America,* 63 F.3d 699, 701 (8th Cir. 1995) (Minnesota law); *LaSociete Generale Immobiliere v. Minneapolis Community Develop. Agency,* 44 F.3d 629, 636 (8th Cir.1994) (same); *Maurice Sunderland Architecture, Inc. v. Simon,* 5 F.3d 334, 337 (8th Cir.1993) (same). " 'Ambiguity exists when the language of a written document, by itself, is reasonably susceptible to more than one meaning.' " *LaSociete Generale,* 44 F.3d at 636 (quoting *Trondson v. Janikula,* 458

N.W.2d 679, 681 (Minn.1990)). The meaning of an unambiguous contract also presents a question of law, *id.,* and must be determined from the language alone. *Simon,* 5 F.3d at 337. Conversely, the interpretation of an ambiguous contract presents a question of fact, thereby precluding summary judgment. *Id.*

The Michalskis contend that they intended to obtain a right to participate in collection of Reppel Steel's accounts receivable and to obligate Bank to provide them with the necessary information to assist in that effort and that paragraph 15 was intended to incorporate and effectuate that intent. Bank, on the other hand, counters with the argument that paragraph 15 merely provides that "if Bank allows the Michalskis to participate in collections of accounts receivable, they are contractually obligated to provide Bank with regular reports of their collection activities on the 15th and last day of each calendar month." (Appellee's Brief at 19.)

With all due respect to Bank's argument, such a reading of paragraph 15 is not immediately apparent, nor does it find support elsewhere in the Agreement. The Michalskis' reading of the paragraph is the more plausible, and we conclude that the paragraph is indeed ambiguous. Accordingly, we must look to extrinsic evidence to determine the parties' intent. *Simon,* 5 F.3d at 337; *Gutierrez,* 523 N.W.2d at 908. Without recounting that evidence in detail, we note that the Michalskis have included in the record correspondence between the parties that tends to support the Michalskis' contention that they were to be given the absolute right to participate in the collection of Reppel Steel's accounts receivable. This is a determination to be made by the district court on remand, however, and we express no further view on the issue.

Having found that the Agreement is ambiguous, we reject Bank's argument that it is an integrated document that brooks no modification by way of extrinsic evidence.

The Michalskis also contend that the district court erred in granting summary judgment on their claim that Bank breached

its covenant of good faith and fair dealing under the Agreement. "Minnesota law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing separate from the underlying breach of contract claim." *Medtronic, Inc. v. ConvaCare, Inc.*, 17 F.3d 252, 256 (8th Cir.1994). Whether the Michalskis have stated a valid claim for breach of the underlying contract remains to be determined on remand. If they have, their claim for breach of the covenant of good faith and fair dealing will be dealt with in due course by the district court.

The judgment is reversed, and the case is remanded to the district court for further proceedings in accordance with the views set forth in this opinion.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

With respect, the court finds an ambiguity in this case where there is none. Under paragraph 15 of the relevant agreement, the guarantors are to inform the bank about any efforts that they make concerning the collection of receivables. If they make no such efforts, or if they have nothing to report, then they are under no obligation. The guarantors want somehow to convert an undertaking by them into an undertaking by the bank, an undertaking, moreover, that creates a condition to the bank's collection from the guarantors. This "interpretation" adds terms to the written agreement, it does not clarify an ambiguity. Even if the relevant words were ambiguous, they simply will not bear the meaning that appellants wish to ascribe to them.

The parol evidence rule is an important guarantee of the integrity of written contracts and such contracts, especially ones with integration clauses, ought not to be supplemented except in cases of real ambiguity where the words create a quandary as to their meaning.

I would therefore affirm the district court.